# In the United States Court of Federal Claims

No. 10-191 C

(E-Filed:  October 21, 2010)

|  |  |
|---|---|
| ENVIRONMENTAL SAFETY CONSULTANTS, INC., ET AL., | ) ) ) |
| Plaintiffs, | ) ) Motion to Dismiss; Contract ) Disputes Act; Punitive Damages; ) Prompt Payment Act; Takings |
| v. | ) Clause ) |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) ) |

<u>Francis O. Kadiri</u>, Stone Mountain, GA, for plaintiffs.

<u>David D'Alessandris</u>, Washington, DC, with whom were <u>Tony West</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Bryant G. Snee</u>, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

HEWITT, Chief Judge

Before the court are plaintiffs' Complaint (Complaint or Compl.), Docket Number (Dkt. No.) 1, filed March 30, 2010; Defendant's Motion to Dismiss (defendant's Motion or Def.'s Mot.) and Defendant's Appendix (Def.'s App.), Dkt. No. 6, filed June 1, 2010; Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss (plaintiffs' Response or Pls.' Resp.), Dkt. No. 7, and Plaintiffs' Appendix (Pls.' App.), Dkt. No. 8, filed July 2, 2010; and Defendant's Reply in Support of Motion to Dismiss (defendant's Reply or Def.'s Reply), Dkt. No. 9, filed July 16, 2010.  Defendant moves to dismiss plaintiffs' contract claims for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC).  Def.'s Mot. 1.  Defendant also moves to dismiss plaintiffs' Fifth Amendment takings claim and plaintiffs' allegation of a violation of the Prompt Payment Act for failure to state a claim upon which relief can be granted

pursuant to Rule 12(b)(6) of the RCFC.  Id.  For the following reasons, the court
GRANTS IN PART and DENIES IN PART defendant's Motion to Dismiss.

I.      Background

        Plaintiffs are Environmental Safety Consultants, Inc. (ESCI) and Peter C. Nwogu
(Nwogu), who is the founder, owner, President and Project Manager of ESCI.  Compl. ¶
6.  Plaintiffs' claims relate to contracts ESCI entered into with the United States
Department of the Navy, the United States Army Corps of Engineers and the National
Parks Service.

        A.      ESCI's Contract with the United States Department of the Navy[1]

        On November 13, 1995 ESCI entered into Contract No. N62470-95-C-2399 FY 95
with the United States Department of the Navy (Navy) to remove storage tanks and
contaminated materials from the Naval Weapons Station in Yorktown, Virginia.[2]  Compl.
¶ 8; Plaintiffs' Exhibit (PX) 12 (Envtl. Safety Consultants, Inc., ASBCA No. 51722, 02-2
BCA ¶ 31,951) 1.[3]  The estimated cost of the work was $561,764.25.  Compl. ¶ 10; PX 2
(Offer) box 22.  On June 12, 1998 the Navy's Contracting Officer (CO) issued a final
decision terminating ESCI's contract for default and notifying ESCI of its appeal rights.[4]
Compl. ¶ 32; PX 12 (Envtl. Safety Consultants, Inc., ASBCA No. 54615, 07-1 BCA ¶
33,483) 22.

---

        [1]The factual background of the Navy contract is discussed thoroughly in Envtl. Safety
Consultants, Inc., ASBCA No. 54615, 07-1 BCA ¶ 33,483.

        [2]Plaintiffs also refer to the contract as Navy Contract No. N62470-95-C-2394.  See
Compl. ¶ 59.

        [3]Plaintiffs attached sixteen exhibits to their Complaint.  Plaintiffs did not provide an
index or descriptions of their exhibits.  Plaintiffs included multiple documents in each exhibit
and did not provide a clear or consistent pagination system.  This court has attempted to provide
a sufficient description of the referenced documents.  Unless otherwise indicated, any page
numbers the court cites are found at the bottom of the referenced document.

        [4]The final decision was issued as Modification P00007 to the contract.  See Plaintiffs'
Exhibit (PX) 12 (Envtl. Safety Consultants, Inc., ASBCA No. 51722, 02-2 BCA ¶ 31,951) 2.

ESCI filed a notice of appeal, docketed as ASBCA No. 51722, with the Armed Services Board of Contract Appeals (ASBCA) on August 26, 1998,[5] in which it appealed "each and every aspect of the decision of June 6, 1998 of the Contracting Officer to Terminate the . . . Contract for Default." PX 11 (Notice of Appeal) 1; PX 12 (Envtl. Safety Consultants, Inc., ASBCA No. 51722, 02-2 BCA ¶ 31,951) 3. In its complaint to the ASBCA, ESCI requested two forms of relief: first, that the termination for default either be reversed or converted into a termination for the convenience of the government, and second, that the ASBCA award ESCI $334,687.85 for work completed on the contract. PX 11 (Notice of Appeal) 6; Compl. ¶ 35; PX 12 (Envtl. Safety Consultants, Inc., ASBCA No. 51722, 02-2 BCA ¶ 31,951) 3. On July 8, 2002 the ASBCA dismissed ESCI's affirmative monetary claim without prejudice because a properly certified claim had not been presented to a Contracting Officer, and ESCI's monetary claim was therefore outside the jurisdiction of the ASBCA. PX 12 (Envtl. Safety Consultants, Inc., ASBCA No. 51722, 02-2 BCA ¶ 31,951) 5. The ASBCA has not yet ruled on ESCI's claim concerning the validity of the termination for default.

ESCI filed a motion for reconsideration of the ASBCA's dismissal of the monetary claim, which the ASBCA denied on October 18, 2002. Envtl. Safety Consultants, Inc., ASBCA No. 51722, 03-1 BCA ¶ 32,057. ESCI then filed a motion requesting that the ASBCA's denial of ESCI's motion for reconsideration be reissued with a later date so that ESCI could appeal the ASBCA's decision to the United States Court of Appeals for the Federal Circuit (Federal Circuit), which the ASBCA denied on May 19, 2003. Envtl. Safety Consultants, Inc., ASBCA No. 51722, 03-2 BCA ¶ 32,260.

ESCI then filed an appeal with the Federal Circuit, which was dismissed on August 20, 2003 because ESCI failed to pay the docketing fee. Envtl. Safety Consultants, Inc. v. Johnson, 74 F. App'x 54 (Fed. Cir. 2003) (unpublished). ESCI paid the filing fee, and the court reinstated the appeal on September 4, 2003. Envtl. Safety Consultants v. Johnson, 75 F. App'x 763 (Fed. Cir. 2003) (unpublished). ESCI failed to comply with the court's order to obtain counsel, so the court dismissed the appeal on December 17, 2003 for failure to prosecute. Envtl. Safety Consultants, Inc. v. Johnson, 85 F. App'x 204 (Fed. Cir. 2003) (unpublished).

Concurrent with its appeal to the Federal Circuit, on October 22, 2003 ESCI submitted a certified claim for equitable adjustment to a Contracting Officer, seeking

---

[5]In their Complaint, plaintiffs allege that Environmental Safety Consultants, Inc. (ESCI) appealed the termination for default on August 18, 1998. Compl. ¶ 34. However, plaintiffs' exhibits show that ESCI filed its appeal on August 26, 1998. PX 11 (Notice of Appeal) 1; PX 12 (Envtl. Safety Consultants, Inc., ASBCA No. 51722, 02-2 BCA ¶ 31,951) 3.

$457,011.02 for additional work ESCI was required to perform.  PX 12 (Envtl. Safety Consultants, Inc., ASBCA No. 54615, 07-1 BCA ¶ 33,483) 9-14.  The Contracting Officer has not issued a final decision for this claim.  Id. at 10.  On May 17, 2004 ESCI filed an appeal with the ASBCA, docketed as ASBCA No. 54615, in which ESCI appealed "each and every aspect of the decision of the Contracting Officer for failure to issue decisions amounting to denial of Request for Equitable Adjustment received by the Contracting Officer on October 22, 2003."  Id. at 9.  On January 31, 2007 the ASBCA dismissed all of ESCI's claims, holding that the Board did not have jurisdiction to hear the claims because they were untimely under the Contract Disputes Act, 41 U.S.C. § 605(a) (2006).[6]  Id. at 44.  On March 29, 2007 ESCI filed a motion for reconsideration with the ASBCA, which the ASBCA dismissed as untimely on June 18, 2007.  PX 12 (Envtl. Safety Consultants, Inc., ASBCA No. 54615, 07-2 BCA ¶ 33613) (referring to the ASBCA's strict enforcement of Board Rule 29, which requires a party seeking a motion for reconsideration of an ASBCA decision to file the motion within thirty days from that party's receipt of a copy of the ASBCA's decision) 3-6.

Additionally, on December 3, 2001 the Contracting Officer issued a final decision which assessed $167,691.75 in liquidated damages against ESCI and notified ESCI of its rights of appeal.  PX 12 (Envtl. Safety Consultants, Inc., ASBCA No. 54615, 07-1 BCA ¶ 33,483) 26.  There is no evidence in the procedural history that ESCI ever appealed the Contracting Officer's December 3, 2001 final decision.  See id.; see also Nwogu v.

---

[6]In its appeal to the Armed Services Board of Contract Appeals (ASBCA), ESCI asserted seven grounds for recovery, which this court will describe briefly:  (1) the contract was materially different from what ESCI had originally anticipated; (2) the Navy unreasonably delayed ESCI's performance; (3) the Navy constructively changed the contract; (4) the Navy unreasonably suspended work; (5) the Navy threatened and exhibited personal animosity to ESCI; (6) the Navy abused its discretion; and (7) the Navy changed material contract terms.  See PX 12 (Envtl. Safety Consultants, Inc., ASBCA No. 54615, 07-1 BCA ¶ 33,483) 26-27.  The ASBCA compared ESCI's assertions in its complaint to the ASBCA with assertions made by ESCI in its October 22, 2003 claims submission to the Contracting Officer.  Id. at 33-36.  In doing so, the ASBCA discovered various claims, including the first five claims listed above, that ESCI never presented to the Contracting Officer for review and dismissed those claims pursuant to the Contract Disputes Act (CDA), 41 U.S.C. § 605 (2000).  Id. at 36.  With regard to the rest of ESCI's claims, including the last two claims listed above, the ASBCA found that ESCI had not presented those claims to the Contracting Officer within six years of when they had first accrued and were therefore time-barred under 41 U.S.C. § 605(a).  Id. at 36-44.  The ASBCA further found that ESCI did not challenge the Contracting Officer's December 3, 2001 liquidated damages assessment within ninety days under 41 U.S.C. § 606, so the ASBCA dismissed that claim for lack of jurisdiction.  Id. at 43.  Finally, the ASBCA determined that ESCI's challenge to the default termination was before the Board in another case, ASBCA No. 51722, so the ASBCA would not consider the issue in the case before it.  Id.

United States, No. 09-268C, 2010 U.S. Claims LEXIS 669, at *8 (Fed. Cl. Aug. 30, 2010). ("Based on the record before the court . . . it appears that ESCI never timely appealed the contracting officer's assessed reprocurement costs and liquidated damages . . . .").[7]

In this case, plaintiffs contend that defendant breached its contract with ESCI by failing to pay ESCI for completed work and by forcing ESCI to transfer its contract to a local contractor. Compl. ¶¶ 60, 61. Plaintiffs also contend that the Navy waived its right to liquidated damages because it acted unreasonably and in bad faith in causing extensive delays in the completion of the contract. Compl. ¶ 64. Finally, plaintiffs contend that defendant violated the Prompt Payment Act. Compl. ¶ 60. Plaintiffs seek judgment in their favor in the amount of $457,011.02, plus interest, costs and fees. Compl. ¶ 65.

B.     ESCI's Contract with the United States Army Corps of Engineers

On September 29, 1995 ESCI entered into Contract No. DACW 38-95-C-0102 with the United States Army Corps of Engineers (USACE) to construct "four Reverie Aquatic Habitat Units and Riprap protection for two bridges" in Mississippi. Compl. ¶ 38. On August 22, 1996 a USACE Contracting Officer terminated ESCI's contract for default. Compl. ¶ 44. On October 10, 1996 the Contracting Officer issued the final decision terminating ESCI's contract for default and notified ESCI of its appeal rights. PX 14 (Envtl. Safety Consultants, Inc., ASBCA No. 54995, 06-1 BCA ¶ 33,230) 2. ESCI received the Contracting Officer's final decision no later than October 22, 1996, on which date ESCI's attorney requested that the Contracting Officer "convert the default termination to a 'no cost termination settlement.'" Id. The Contracting Officer denied ESCI's request on December 4, 1996. Id. There is no evidence in the procedural history that ESCI ever appealed the Contracting Officer's October 10, 1996 final decision of the termination for default to the ASBCA. Id.

In a letter dated September 23, 2002, ESCI submitted a request for equitable adjustment to the Contracting Officer, seeking $98,639.18 for work completed on the contract. Id. ESCI resubmitted this request on March 16, 2003. Id. In an April 23, 2003

---

[7]The court notes that plaintiffs filed another case in this court, assigned to a different judge (Case No. 09-268C). That case addressed claims relating to two contracts with the Navy, including Contract No. N62470-95-C-2399, the Navy contract at issue in this case. A question on the intake "Cover Sheet" filled out by plaintiff's attorney and filed with plaintiff's Complaint, asks, "Is this case directly related to any proceeding or previous case?" Plaintiffs' attorney marked the "No" box with an "x," despite the fact that Case No. 09-268C was then pending. Case No. 09-268C was decided on August 30, 2010. See Nwogu v. United States, No. 09-268C, 2010 U.S. Claims LEXIS 669 (Fed. Cl. Aug. 30, 2010).

letter, the Contracting Officer issued a final decision that denied ESCI's request for equitable adjustment and informed ESCI of its right to appeal.[8]  Id.  ESCI received the Contracting Officer's final decision on May 20, 2003.  Id.  ESCI sent a letter dated May 30, 2003 to the Contracting Officer characterizing the final decision as a "partial answer to [ESCI's] request for equitable adjustment."  Id.  The Contracting Officer's June 4, 2003 reply to ESCI clarified that the "April 23, 2003 . . . Final Decision was not a partial answer to [ESCI's request for equitable adjustment].  Instead, it was a total and uncategorical [sic] denial . . . ."  Id. at 3.

Two years later, in a letter dated January 10, 2005, ESCI requested that the Contracting Officer reconsider its request for equitable adjustment, again seeking $98,639.18.  Id.  ESCI did not allege any new facts in this letter.  Id.  The Contracting Officer's January 14, 2005 letter denied ESCI's request, refused to reconsider the April 23, 2003 final decision, and informed ESCI that the time for appeal had expired.  Id.  In a second letter dated January 24, 2005, ESCI submitted another request for reconsideration to the Contracting Officer, seeking $78,889.13.  Id. at 3-4; Compl. ¶ 47.  The Contracting Officer's January 27, 2005 letter denied ESCI's request, refused to reconsider and reiterated that the time for appeal had expired.[9]  PX 14 (Envtl. Safety Consultants, Inc., ASBCA No. 54995, 06-1 BCA ¶ 33,230) 4.

On April 29, 2005 ESCI filed an appeal with the ASBCA, docketed as ASBCA No. 54995, based on the denial of its January 24, 2005 request for reconsideration.  Id.; Compl. ¶ 49.  On March 7, 2006 the ASBCA dismissed the appeal, holding that because ESCI failed to appeal the Contracting Officer's April 23, 2003 final decision within the statutory 90-day appeal period, the ASBCA lacked jurisdiction to entertain the appeal. Compl. ¶ 50; PX 14 (Envtl. Safety Consultants, Inc., ASBCA No. 54995, 06-1 BCA ¶ 33,230) 5-7.  ESCI filed a motion for reconsideration on April 6, 2006, which the ASBCA denied on June 19, 2006.  Compl. ¶ 50; Envtl. Safety Consultants Inc., ASBCA No. 54995, 06-2 BCA ¶ 33,321.

---

[8]Plaintiffs allege that the Contracting Officer denied ESCI's request on March 23, 2003. Compl. ¶ 46; Pls.' Resp. 13.  However, plaintiffs' Exhibit 14 shows that the actual date was April 23, 2003.  See PX 14 (Envtl. Safety Consultants, Inc., ASBCA No. 54995, 06-1 BCA ¶ 33,230) 2.

[9]Plaintiffs allege that the Contracting Officer denied ESCI's January 24, 2005 request on June 4, 2003.  Compl. ¶ 47.  However, plaintiffs' Exhibit 14 shows that the actual date was January 27, 2005.  See PX 14 (Envtl. Safety Consultants, Inc., ASBCA No. 54995, 06-1 BCA ¶ 33,230) 4.

On September 15, 2006 ESCI filed a notice of appeal with the Federal Circuit.  See Envtl. Safety Consultants, Inc. v. Harvey, 208 F. App'x 822 (Fed. Cir. 2006) (unpublished).  The court dismissed the appeal on October 11, 2006 because ESCI failed to pay the docketing fee.  Id.

In this case, plaintiffs contend that defendant breached its contract with plaintiffs and wrongfully withheld contract funds before defendant terminated the contract for default.  Compl. ¶¶ 51, 67.  Plaintiffs seek judgment in their favor in the amount of $78,880.15, plus interest and fees.  Compl. ¶¶ 68, 69.

C.     ESCI's Contract with the National Parks Service

On September 25, 1995 ESCI entered into Contract No. 1443CX300095093 with the National Parks Service (the NPS), a division of the United States Department of the Interior, to replace underground storage tanks at multiple sites in the District of Columbia and Maryland.  Compl. ¶ 52.  On August 2, 1996 the Contracting Officer for the NPS terminated ESCI's contract for default.  Compl. ¶ 56.  On September 12, 1996 ESCI appealed the termination for default to the Interior Board of Contract Appeals (IBCA), docketed as IBCA No. 3626-96.  Compl. ¶ 57.  ESCI and the NPS reached a joint settlement agreement whereby defendant agreed to convert the termination for default into a termination for convenience and to pay plaintiff $31,216.90, which was the "full and final payment on this contract."  PX 16 (Modification of Contract) block 8.  The joint settlement agreement was the "complete and final settlement of IBCA Case No. 3626-96" and "constitute[d] a negotiated settlement of all claims under and relating to this contract."  Id.  Pursuant to the parties' joint settlement agreement, on November 13, 1998 the IBCA dismissed ESCI's appeal with prejudice.  PX 16 (Envtl. Safety Consultants Inc., IBCA No. 3626-96, Order Dismissing Appeal).

On November 3, 2001, three years after the IBCA dismissed ESCI's appeal with prejudice, ESCI resubmitted its appeal to the IBCA, alleging that the NPS wrongfully modified the contract and illegally paid its funds to ESCI's attorney, who had signed the agreement on ESCI's behalf.  Def.'s App. 1 (Envtl. Safety Consultants Inc., IBCA No. 3626-96, Order Docketing and Dismissing Duplicative and Tardy Appeal).  The IBCA treated ESCI's submission as a motion for reconsideration, which it denied as untimely on November 6, 2001.  Id.

Plaintiffs allege that in June 2003 ESCI submitted a claim to a Contracting Officer seeking an equitable adjustment to Contract No. 1443CX300095093 in the amount of

$206,334.38.[10]  Pls.' Resp. 14; see Pls.' App. (Request for Equitable Adjustment) 1-12.[11] Plaintiffs further allege that the Contracting Officer failed to respond within sixty days, at which point plaintiffs filed an appeal with the IBCA.[12]  Pls.' Resp. 14-15.  Noting that in November 1998 plaintiffs and the NPS entered into a joint settlement agreement and the IBCA subsequently dismissed ESCI's claim with prejudice, the IBCA dismissed plaintiffs' appeal as duplicative on August 8, 2003.  Pls.' App. (IBCA letter dated August 8, 2003).

On November 10, 2003 ESCI filed a notice of appeal with the Federal Circuit, in which ESCI "appeal[ed] each and every aspect of the decision of 08 August 2003."  Pls.' App. (Notice of Appeal) 2.  The court dismissed ESCI's appeal because ESCI was not represented by counsel and because ESCI failed to pay the filing fee.  Compl. ¶ 59; Envtl. Safety Consultants, Inc. v. Norton, 85 F. App'x 746 (Fed. Cir. 2003) (unpublished).

In this case, plaintiffs seek a judgment in their favor for $144,527.47, plus interest, which plaintiffs allege is the amount due for work plaintiffs completed on the contract. Compl. ¶¶ 70, 71.

II.     Legal Standards

A.     12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Subject matter jurisdiction is a threshold matter which a court must determine at the outset of a case.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998); PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1365 (Fed. Cir. 2007).  The plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988) (citing

---

[10]Plaintiffs' Appendix includes an undated request for equitable adjustment seeking $206,334.67 related to the NPS contract.  Pls.' App. 1-12.  Plaintiffs do not explain the discrepancy between the amount alleged in their Response ($206,334.38), Pls.' Resp. 14-15, and the amount listed in their request for equitable adjustment ($206,334.67), Pls.' App. 12.

[11]Plaintiffs' Appendix contains multiple documents.  Plaintiffs did not provide an index or description of these documents, nor did they provide a clear or consistent pagination system. This court has attempted to provide a sufficient description of the referenced documents.  Unless otherwise indicated, any page numbers the court cites are found at the bottom of the referenced document.

[12]In their Complaint, plaintiffs appear to allege that in August 2003 plaintiffs were appealing the Interior Board of Contract Appeals' (IBCA) dismissal of an earlier appeal.  See Compl. ¶¶ 57-58.

Zunamon v. Brown, 418 F.2d 883, 886 (8th Cir. 1969)).  The court must accept as true all undisputed allegations of fact made by the non-moving party and draw all reasonable inferences from those facts in the non-moving party's favor.  Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995) (citing Scheuer v. Rhodes, 416 U.S. 232, 236-37 (1974)).  However, "[w]hen a party challenges the jurisdictional facts alleged in the complaint, the court may consider relevant evidence outside the pleadings to resolve the factual dispute."  Arakaki v. United States, 62 Fed. Cl. 244, 247 (2004) (citing Reynolds, 846 F.2d at 747 and Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985)).  If a court determines that it does not have jurisdiction, it must dismiss the claim.  RCFC 12(h)(3).

B.      Transfer for Lack of Subject Matter Jurisdiction

Under 28 U.S.C. § 1631 (2006), a federal court may transfer a case to another federal court when (1) the transferring court lacks subject matter jurisdiction; (2) the case could have been brought in the transferee court at the time it was filed; and (3) such a transfer is in the interest of justice.  See Rodriguez v. United States, 862 F.2d 1558, 1559-60 (Fed. Cir. 1988) (citing Town of North Bonneville, Wash. v. U.S. District Court, 732 F.2d 747, 750 (9th Cir. 1984)).

C.      12(b)(6) Motion to Dismiss for Failure to State a Claim

If a plaintiff's complaint fails to state to state a claim upon which relief can be granted, the court must dismiss that claim.  See RCFC 12(b)(6).  In determining whether it should grant the 12(b)(6) motion, the court "must accept as true all the factual allegations in the complaint" and make "all reasonable inferences in favor of the non-movant."  Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (internal citations omitted).  A plaintiff's factual allegations are sufficient to defeat a 12(b)(6) motion when the complaint contains "facial plausibility," meaning that the pleading "allows the court to draw the reasonable inference that the defendant is liable."  Grayton v. United States, 92 Fed. Cl. 327, 334 (2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).

III.    Discussion

The Tucker Act establishes and limits the jurisdiction of the United States Court of Federal Claims (Court of Federal Claims).  28 U.S.C. § 1491 (2006).  The Tucker Act provides that this court has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. §

1491(a)(1).  The Tucker Act provides the waiver of sovereign immunity necessary for a plaintiff to sue the United States for money damages.  United States v. Mitchell, 463 U.S. 206, 212 (1983).  However, the Tucker Act does not confer any substantive rights upon a plaintiff.  United States v. Testan, 424 U.S. 392, 398-401 (1976).  A plaintiff must establish an independent substantive right to money damages from the United States, that is, a money-mandating source within a contract, regulation, statute or constitutional provision itself, in order for the case to proceed.  Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

A.      Breach of Contract Claims

The Tucker Act sets out this court's jurisdiction over disputes arising under the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601–13 (2006):

> The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the [CDA], including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under [section 605 of the CDA].

28 U.S.C. § 1491(a)(2); Alliant Techsystems, Inc. v. United States, 178 F.3d 1260, 1264 (Fed. Cir. 1999) (quoting same).  The CDA's provisions apply to the ASBCA and to the IBCA.  41 U.S.C. § 601(6).[13]

1.      Navy Contract

In Count One (a)[14] of their Complaint, plaintiffs allege that defendant breached the Navy contract with plaintiffs by "withholding progress payments and fail[ing] to pay Plaintiffs for work completed" on the contract from November 1995 through August 12, 1998.  Compl. ¶¶ 60, 63.  The court denies defendant's motion to dismiss this claim.

---

[13]Section 601(6)(B) of the CDA currently states that an "agency board of contract appeals" includes the Civilian Board of Contract Appeals.  Effective January 6, 2007 with an amendment to the CDA, the IBCA, along with various other agency boards of contract appeals, was terminated, and its cases were transferred to the new Civilian Board of Contract Appeals. National Defense Authorization Act for Fiscal Year 2006, Pub. L. No. 109-163, 119 Stat. 3392-93.

[14]Plaintiffs label their counts as follows: Count One (a), Count One (b), Count II, Count III, Count IV and Count V.  The court follows plaintiffs' numbering system.

10

In their Response, plaintiffs allege facts concerning an October 2003 "written claim [plaintiffs submitted] to the contracting officer for a decision of payments of overdue invoices and wrongful [sic] withheld earned contract funds in the amount of approximately $457,762.37." Pls.' Resp. 12. Plaintiffs further assert that the Contracting Officer did not make a decision on their claim within sixty days, so that under the CDA, their claim was "deemed denied." Id.; see 41 U.S.C. § 605(c)(5). In their Complaint, plaintiffs do not refer to their October 2003 claim submission to the Contracting Officer or the failure of the Contracting Officer to issue a decision, but they do make a passing reference to the ASBCA's actions concerning the deemed denial. See Compl. ¶¶ 36, 37. Plaintiffs also reference Exhibit 12 of their Complaint, which, among other documents, contains a January 31, 2007 opinion by the ASBCA that discusses the October 2003 claim and its deemed denial. PX 12 (Envtl. Safety Consultants, Inc., ASBCA No. 54615, 07-1 BCA ¶ 33,483) 9-14. The court finds that plaintiffs' Complaint regarding the deemed denial of a written claim submitted in October 2003 satisfies the minimum standard to meet the notice pleading requirements. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (stating that the complaint should "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).[15]

Plaintiffs' claim relating to their October 2003 submission to the Contracting Officer is the only claim from Count One that is not dismissed.[16] This court has jurisdiction over this claim for two reasons: (1) because the Contracting Officer failed to make a final decision on the claim, the twelve month statute of limitations to bring suit in the Court of Federal Claims has not yet begun to run, and (2) because the ASBCA lacked

---

[15]Federal Rule of Civil Procedure 8(a), which governs the contents of complaints in federal district courts and was addressed by the Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), is identical to the Rule of the Court of Federal Claims (RCFC) 8(a), which governs the contents of complaints in the United States Court of Federal Claims (Court of Federal Claims).

[16]The briefing on Count One relating to the October 22, 2003 claim did not address a potential jurisdictional issue, to which the court's attention was drawn by the span of time between the formation of the contract in 1995 and the plaintiffs' submission to the Contracting Officer in 2003. Plaintiffs' claims relating to the October 22, 2003 claim may be outside another statute of limitations in the CDA. The CDA states that "[e]ach claim by a contractor against the government relating to a contract . . . shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 605(a) (2006). Neither party has addressed the date when plaintiffs' claim accrued. If plaintiffs' claim accrued more than six years before October 22, 2003, it would be subject to dismissal for lack of jurisdiction.

11

jurisdiction to hear the claim, plaintiffs did not make a binding election to pursue their claim in the ASBCA.

Under the CDA, upon receipt of a written claim from a contractor, a Contracting Officer must issue a final decision within sixty days. 41 U.S.C. § 605(c)(1), (2). If the Contracting Officer fails to issue a decision within the requisite time period, the claim is deemed denied. 41 U.S.C. § 605(c)(5). After a contractor receives the Contracting Officer's final decision (final CO decision) or the sixty days have passed since the Contracting Officer received the claim (when the claim is "deemed denied"), the contractor may appeal either to an agency board of contract appeals within ninety days or to the Court of Federal Claims within twelve months. 41 U.S.C. §§ 606, 609(a). If the claim is deemed denied, the contractor is authorized to file suit under 41 U.S.C. § 605(c)(5), but the contractor is not required to do so. Pathman Constr. Co. v. United States (Pathman), 817 F.2d 1573, 1577 (Fed. Cir. 1987). "[B]ecause the limitations period begins to run upon receipt of a decision, the limitations period is only triggered by a written decision, not by a deemed denial." Patton v. United States, 74 Fed. Cl. 110, 115-16 (2006) (citing Pathman, 817 F.2d at 1576) (emphasis omitted). Furthermore, the general six year statute of limitations under the Tucker Act, 28 U.S.C. § 2501, does not apply when a plaintiff pursues a claim under the CDA. Sys. Planning Corp. v. United States, No. 07-678C, 2010 WL 3914700, at *3 (Fed. Cl. Oct. 6, 2010). Here, because the Contracting Officer never issued a final decision for plaintiffs' October 2003 claim, the twelve-month statute of limitations has not yet begun to run, and plaintiffs' claim is timely.

Under the election doctrine applicable to CDA claims, once a contractor chooses the forum in which to appeal, the contractor's choice is binding and the contractor is no longer able to pursue its appeal in the alternate forum. Nat'l Neighbors, Inc. v. United States, 839 F.2d 1539, 1542 (Fed. Cir. 1988) (stating that "[t]he binding election of forums is an 'either-or' alternative, and, as such, does not provide a contractor with dual avenues for contesting a contracting officer's adverse decision") (citing Santa Fe Eng'rs, Inc. v. United States, 677 F.2d 876, 878 (Ct. Cl. 1982)); BRC Lease Co. v. United States, 93 Fed. Cl. 67, 71 (2010) ("[O]nce the contractor makes a binding forum election, the decision must stand and the contractor may not appeal the contracting officer's decision in the non-selected forum.").[17] However, a contractor's choice to file an appeal with a

_____

[17] Citing a pre-CDA case, Crown Coat Front Co., v. United States, 386 U.S. 503 (1967), plaintiffs argue, incorrectly, that plaintiffs were required to file an appeal with the agency board of contract appeals before filing a complaint with the Court of Federal Claims. Pls.' Resp. 10, 16. However, under the CDA, the contractor must make a binding decision to appeal the Contracting Officer's final decision to either an agency board of contract appeals or to the Court of Federal Claims. 41 U.S.C. § 609(a)(1) (providing that "in lieu of appealing the decision of the

forum that lacks jurisdiction is not a binding election.  Nat'l Neighbors, Inc., 839 F.2d at 1542; Bonneville Assocs. v. United States (Bonneville), 43 F.3d 649, 653 (Fed. Cir. 1994) ("The Election Doctrine does not apply . . . if the forum originally selected lacked subject matter jurisdiction over the appeal.").  If an agency board of contract appeals dismisses an appeal because it lacks jurisdiction, the plaintiff is not precluded from filing an appeal with the Court of Federal Claims.  Bonneville, 43 F.3d at 653 (citing Nat'l Neighbors, Inc., 839 F.2d at 1542).  Here, because the ASBCA dismissed plaintiffs' appeal of the deemed denied claim for lack of jurisdiction, plaintiffs did not made a binding election at the ASBCA and may pursue their claim in this court.  See PX 12 (Envtl. Safety Consultants, Inc., ASBCA No. 54615, 07-1 BCA ¶ 33,483) 44.

However, three additional claims contained in Count One of plaintiffs' Complaint must be dismissed.  In Count One (a) of their Complaint, plaintiffs allege that defendant breached its contract with plaintiffs by "forc[ing] Plaintiffs to relinquish and transfer their contractual rights to a local contractor."  Compl. ¶ 61.  In Count One (b) of their Complaint, plaintiffs claim that defendant waived its right to liquidated damages.  Compl. ¶ 64.  Finally, in their Response, plaintiffs state that their "claim is the failure of the ASBCA to act as it should and the failure to act was the ultimate breach requiring Plaintiffs to file suit in the Court of Federal Claims . . . ."  Pls.' Resp. 12.  Because this court does not have jurisdiction over plaintiffs' claims relating to the "relinquish[ment] and transfer" of the contract, defendant's alleged waiver of liquidated damages, or the ASBCA's actions, each is dismissed pursuant to RCFC 12(b)(1).

Plaintiffs' allegation in Count One (a) of the Complaint that defendant breached its contract with plaintiffs by terminating the contract and transferring plaintiffs' contractual rights to a local contractor is dismissed for lack of jurisdiction because the claim was filed in this court beyond the applicable statute of limitations.  Here, while plaintiffs fail to allege that they received a final CO decision regarding the termination of the contract, they do assert that "[o]n June 12, 1998, the Defendant wrongfully terminated the aforesaid Contract . . . ."  Compl. ¶ 32.  Plaintiffs' Exhibit 11 shows that plaintiffs did receive a final CO decision regarding the termination for default in June 1998.  See PX 11 (Notice of Appeal to the ASBCA) (stating that plaintiffs appeal "each and every aspect of the decision of June 6, 1998 of the Contracting Officer to Terminate the . . . Contract for Default.") 1.  Plaintiffs' appeal of the final CO decision was not timely filed in this court.  Under the CDA, a contractor must file its complaint in the Court of Federal Claims within twelve months of receipt of a final CO decision; otherwise, the complaint is outside the

_____

contracting officer under [41 U.S.C. § 605] to an agency board, a contractor may bring an action directly on the claim in the United States Court of Federal Claims").

statute of limitations and must be dismissed.[18]   41 U.S.C. § 609(a)(1), (3); Paradigm Learning, Inc. v. United States, 93 Fed. Cl. 465, 474 (2010).  "[A] termination for default is a government claim that triggers the twelve-month statutory appeal period."  Arono, Inc. v. United States (Arono), 49 Fed. Cl. 544, 549 (2001) (citing Malone v. United States, 849 F.2d 1441, 1443-45 (Fed. Cir. 1988)).  Here, plaintiffs received the final CO decision regarding the termination of the contract in June 1998.  See PX 11 (Notice of Appeal to the ASBCA).  They did not file their Complaint with this court until March 30, 2010.  Dkt. No. 1.  Because the more than eleven-year span between the time plaintiffs received the final CO decision and the time plaintiffs filed their Complaint in this court is well beyond the twelve month statute of limitations under 41 U.S.C. § 609(a)(3), this claim is dismissed for lack of jurisdiction.

Plaintiffs' allegation that the Navy waived its rights to liquidated damages by delaying plaintiffs' completion of the contract is also dismissed because the claim was filed in this court beyond the applicable statute of limitations.  Here, plaintiffs fail to allege that they received a final CO decision regarding liquidated damages.  See Compl. passim; see also Pls.' Resp. passim.  However, Plaintiffs' Exhibit 12 shows that a Contracting Officer issued a final decision assessing liquidated damages against ESCI on December 3, 2001.  PX 12 (Envtl. Safety Consultants, Inc., ASBCA No. 54615, 07-1 BCA ¶ 33,483) 26.  Plaintiffs filed their Complaint in this court on March 30, 2010.  Dkt. No. 1.  Because plaintiffs waited for more than eight years after the receipt of the final CO decision to file their Complaint with this court, their claim regarding the liquidated damages assessment is not timely under 41 U.S.C. § 609(a)(3) and is dismissed for lack of jurisdiction.

In their Response to defendant's Motion to Dismiss, plaintiffs allege for the first time that their "claim is the failure of ASBCA to act as it should and the failure to act was the ultimate breach . . . ."  Pls.' Resp. 12.  To the extent that plaintiffs ask this court to review the actions of the ASBCA, this claim is dismissed.  The Court of Federal Claims has no jurisdiction to review the actions of the ASBCA.  See 41 U.S.C. § 607(g)(1).  If a contractor elects to file its appeal of a final CO decision with an agency board of contract appeals rather than with the Court of Federal Claims, the board's actions are subject to review only by the Federal Circuit.  41 U.S.C. § 607(g)(1)(A).

---

[18]There is some possibility that the twelve month statute of limitations under 41 U.S.C. § 609(a)(3) may be subject to equitable tolling.  See Nwogu v. United States, No. 09-268C, 2010 U.S. Claims LEXIS 669, at *40-42 (Fed. Cl. Aug. 30, 2010) (citing Arctic Slope Native Ass'n v. Sebelius, 583 F.3d 785, 798-800 (Fed. Cir. 2009)).  However, equitable tolling is not applicable to this case because plaintiffs neither argued for equitable tolling as a legal matter nor provided evidence of any circumstances which could support the grant of relief by equitable tolling.

The dismissed claims will not be transferred to another court under 28 U.S.C. § 1631 because they could not be brought in another court. Under the CDA, a contractor may appeal a Contracting Officer's final decision only to an agency board of contract appeals or the Court of Federal Claims. 41 U.S.C. §§ 606, 609(a). Plaintiffs' claims cannot be transferred to an agency board of contract appeals because it is not a "court" within the meaning of 28 U.S.C. § 1631 (2006), the statute authorizing transfers.[19] See Skillo v. United States, 68 Fed. Cl. 734, 746-47 (2005).

2.    USACE Contract

In Count II of their Complaint, plaintiffs allege that defendant "wrongfully withheld progress payments under the pretext that the government anticipated termination of contract for default," and plaintiffs seek $78,880.15 for work completed on the contract. Compl. ¶ 67, 68. Because this court does not have jurisdiction over this claim, it is dismissed pursuant to RCFC 12(b)(1).

It is unclear which final CO decision, if any, that plaintiffs appeal in Count II. To the extent that plaintiffs' claim is unrelated to a final CO decision, the claim is dismissed for lack of jurisdiction. Under the CDA, there are two prerequisites to filing an appeal with an agency board of contract appeals or with the Court of Federal Claims: first, "the contractor must have submitted a proper CDA claim to the contracting officer requesting a decision, [41 U.S.C.] § 605(a)," and second, "the contracting officer must either have issued a decision on the claim [41 U.S.C.] § 609(a) or have failed to issue a final decision within the required time period, [41 U.S.C.] § 605(c)(5)." England v. Sherman R. Smoot Corp., 388 F.3d 844, 852 (Fed. Cir. 2004); Arctic Slope Native Ass'n v. Sebelius, 583 F.3d 785, 793 (Fed. Cir. 2009) ("[T]he presentment of claims to a contracting officer . . . is a prerequisite to suit in the Court of Federal Claims."). If the contractor does not submit a claim to the Contracting Officer, the Contracting Officer is unable to render a final decision and, without a decision, there is no basis for jurisdiction in the Court of Federal Claims. See M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1327-28 (Fed. Cir. 2010); see also Paragon Energy Corp. v. United States, 645 F.2d 966, 971 (Ct. Cl. 1981) (applying the concept to the United States Court of Claims).

Plaintiffs allege that they received two final CO decisions related to the USACE contract. The first final CO decision, received by plaintiffs no later than October 22,

---

[19]The term "court" in 28 U.S.C. § 1631 includes "the courts of appeals and district courts of the United States, the United States District Court for the District of the Canal Zone, the District of Guam, the District Court of the Virgin Islands, the United States Court of Federal Claims, and the Court of International Trade." 28 U.S.C. § 610 (2006).

1996, terminated the USACE contract for default.  See Compl. ¶ 44; PX 14 (Envtl. Safety
Consultants, Inc., ASBCA No. 54995, 06-1 BCA ¶ 33,230) 2.  The second final CO
decision, received by plaintiffs on May 20, 2003, denied ESCI's March 16, 2003 request
seeking $98,639.18 for work completed on the contract.  See Compl. ¶¶ 45-46; PX 14
(Envtl. Safety Consultants, Inc., ASBCA No. 54995, 06-1 BCA ¶ 33,230) 2.  Plaintiffs
had twelve months from the date of their receipt of each final CO decision to file an
appeal with this court.  41 U.S.C. § 609(a)(1), (3).[20]  Plaintiffs filed their Complaint with
this court on March 30, 2010, more than thirteen years after their receipt of the first final
CO decision and nearly seven years after their receipt of the second final CO decision.
Dkt. No. 1.  Because the twelve-month statute of limitations to appeal the final CO
decisions to this court has expired, this claim is dismissed for lack of jurisdiction.

To the extent that plaintiffs appeal their requests for reconsideration that were
denied by the Contracting Officer, those claims are also dismissed.  On three separate
occasions plaintiffs submitted what plaintiffs may construe as requests for reconsideration
to the Contracting Officer.[21]  On October 22, 1996 ESCI requested that the Contracting
Officer "convert the default termination to a 'no cost termination settlement,'" which the
Contracting Officer denied on December 4, 1996.  PX 14 (Envtl. Safety Consultants, Inc.,
ASBCA No. 54995, 06-1 BCA ¶ 33,230) 2.  On January 10, 2005 ESCI requested that the
Contracting Officer reconsider its March 2003 request for equitable adjustment, which
the Contracting Officer denied on January 14, 2005.  Id. at 3.  On January 24, 2005 ESCI
submitted another request for reconsideration, which the Contracting Officer denied on
January 27, 2005.  Id. at 3-4; Compl. ¶ 47.

If a contractor timely submits a request for reconsideration of a final CO decision
to the Contracting Officer, the time the Contracting Officer spends reviewing the request
suspends both the finality of the CO decision and the time for appeal under the CDA.

---

[20]Citing a pre-CDA case, Nager Electric Co. v. United States, 368 F.2d 847 (Ct. Cl.
1966), plaintiffs erroneously contend that their "cause of action accrued on March 7, 2006, when
[the] ASBCA gave its final decision."  Pls.' Resp. 13-14.  However, the applicable statute of
limitations for bringing an action under the CDA in the Court of Federal Claims is contained in
41 U.S.C. § 609(a)(1), (3), which allows a contractor twelve months from its receipt of a final
CO decision to file a complaint in the Court of Federal Claims.  The court notes that even if
plaintiffs' contention were correct, plaintiffs' claim still would not be timely in this court because
plaintiffs filed their Complaint more than four years after the ASBCA's decision.

[21]Because plaintiffs' claims relating to Count II would not be timely even if all of
plaintiffs' submissions to the Contracting Officer were treated by the Contracting Officer as
requests for reconsideration, the court does not find it necessary to decide whether plaintiffs'
submissions to the Contracting Officer were in fact requests for reconsideration.

Arono, 49 Fed. Cl. at 549.  "[The] suspension of the finality of a [C]ontracting [O]fficer's decision requires both a determination that the contractor had actually sought reconsideration as well as a determination that the [C]ontracting [O]fficer had recognized the request."  Metrotop Plaza Assocs. v. United States, 82 Fed. Cl. 598, 601 (2008).  However, the Contracting Officer's "reaffirmation of a final decision does not, per se, constitute reconsideration of that decision.  Instead, it is the amount of time, if any, a [C]ontracting [O]fficer spends reviewing a plaintiff's request for reconsideration that suspends the finality of the decision regardless of whether that decision is ultimately reconsidered or reversed."  Arono, 49 Fed. Cl. at 550.

Here, the Contracting Officer did not recognize or review the two requests for reconsideration plaintiffs submitted in January 2005.  Within four days of his receipt of each claim, the Contracting Officer responded to plaintiffs with his refusal to reconsider the denial of ESCI's request for equitable adjustment.  See PX 14 (Envtl. Safety Consultants, Inc., ASBCA No. 54995, 06-1 BCA ¶ 33,230) 3-4.  Because the Contracting Officer did not recognize the January 2005 requests for reconsideration, the time to appeal the April 2003 final CO decision under the CDA was not suspended.  See Arono, 49 Fed. Cl. at 550 ("[W]ithout a review of the request, the finality of the earlier decision could not be suspended."); see also Educators Assocs., Inc. v. United States, 41 Fed. Cl. 811, 813-15 (1998) (finding that because there was no evidence that the Contracting Officer considered the plaintiff's request for reconsideration, the date of the original final CO decision, not the date of the Contracting Officer's letter reaffirming the decision, commenced the statute of limitations to appeal under the CDA).

Regarding ESCI's 1996 request, given the six-week span between ESCI's request and the Contracting Officer's denial, it is plausible that the Contracting Officer did recognize and review ESCI's request.  See PX 14 (Envtl. Safety Consultants, Inc., ASBCA No. 54995, 06-1 BCA ¶ 33,230) 2.  However, with regard to all three requests for reconsideration, even if the time to appeal under the CDA commenced on the date the Contracting Officer denied each of ESCI's requests, plaintiffs' claims still would not be timely filed in this court.  A plaintiff has twelve months from the time of the Contracting Officer's disposition of the plaintiff's request for reconsideration to file an appeal with the Court of Federal Claims.  See Arono, 49 Fed. Cl. at 552.  Here, the Contracting Officer issued the final dispositions of plaintiffs' requests on December 4, 1996, January 14, 2005, and January 27, 2005.  PX 14 (Envtl. Safety Consultants, Inc., ASBCA No. 54995, 06-1 BCA ¶ 33,230) 2-4.  Plaintiffs filed their Complaint with this court on March 30, 2010. Dkt. No. 1.  Because plaintiffs filed their Complaint more than thirteen years after the Contracting Officer's denial of plaintiffs' first request for reconsideration and more than five years after the Contracting Officer's denials of plaintiffs' second and third requests for reconsideration, their claim is not timely and is dismissed for lack of jurisdiction.

17

In their Response, plaintiffs for the first time allege that "Plaintiffs' claim is the failure of ASBCA to act as it should and the failure to act was the ultimate breach requiring Plaintiffs to file suit in the Court of Federal Claims . . . ." Pls.' Resp. 14. Because the ASBCA's actions are subject to review exclusively by the Federal Circuit, 41 U.S.C. § 607(g)(1)(A), this claim is dismissed for lack of jurisdiction.

The dismissed claims will not be transferred to another court under 28 U.S.C. § 1631 because they could not be brought in another court. Under the CDA, a contractor may appeal a final decision only to an agency board of contract appeals or the Court of Federal Claims. 41 U.S.C. § § 606, 609(a).

3.    NPS Contract

In Count III of their Complaint, plaintiffs allege that the government owes them $144,527.47 for work plaintiffs completed on Contract No. 144CX300095093. Compl. ¶¶ 70, 71. In their Response, plaintiffs for the first time allege that their "complaint is the propriety of [the] contracting officer's wrongful termination of Plaintiffs' contract that triggered other government agencies to withhold Plaintiffs' earned contract funds in the two contracts Plaintiffs had with other government agencies." Pls.' Resp. 14. Also for the first time, plaintiffs allege that their "complaint is the validity of the contracting officer's termination of Plaintiffs' contract for the government's convenience." Id. Because the court lacks jurisdiction over these claims, they are dismissed pursuant to RCFC 12(b)(1).

To the extent that plaintiffs' claim relates to the validity of the settlement agreement, that claim is dismissed. Plaintiffs' Exhibit 16 shows that ESCI and the NPS entered into a "mutually agreed upon . . . full and final settlement" agreement concerning Contract No. 144CX300095093 on November 12, 1998. PX 16 (Modification of Contract) block 8. Under the settlement agreement, the government agreed to convert the termination for default into a termination for convenience and to pay ESCI $31,216.90, which was the "full and final payment of this contract." Id. The agreement was a "negotiated settlement of all claims under and relating to [the] contract, and [was a] full and final settlement thereof." Id. ESCI acknowledged that it had "no unsatisfied claim against the Government . . . [and] release[d] and discharge[d] the Government from any and all claims or demands" related to the settlement agreement. Id. The agreement was signed by an agent and attorney for ESCI. Id. Under the CDA, a settlement agreement between the parties is a final resolution of the plaintiff's claim. Sarang Corp. v. United States, 76 Fed. Cl. 560, 569 (2007). Furthermore, the interpretation of a settlement agreement is based on "the objective words of [the parties'] agreement." Herman B. Taylor Constr. Co. v. Barram, 203 F.3d 808, 813 (Fed. Cir. 2000) (quoting Novamedix,

18

<u>Ltd. v. NDM Acquisition Corp.</u>, 166 F.3d 1177, 1180 (Fed. Cir. 1999)).  Here, the objective words make clear that Contract No. 144CX300095093 was terminated by the settlement agreement.

Although plaintiffs characterize their claims relating to the NPS contract as contract claims, it is the court's view that plaintiffs' assertions relating to Contract No. 144CX300095093 are essentially a fraud claim concerning the validity of the settlement agreement.  Plaintiffs' Appendix includes ESCI's Notice of Appeal to the Federal Circuit, which was submitted and signed by Peter Nwogu, the President and CEO of ESCI and a plaintiff in this case.  Pls.' App. (Notice of Appeal) 1-2.  The court has examined ESCI's grounds for appeal to the Federal Circuit, which provide insight into the circumstances that caused plaintiffs to file their 2001 and 2003 appeals with the IBCA, their 2003 appeal with the Federal Circuit, and their present appeal with this court.  ESCI asserted that because Nwogu himself did not sign the settlement agreement, the agreement was invalid. <u>Id.</u>  Specifically, ESCI alleged the following:

> The wrongful dismissal of appellant's original appeal without proper
> documentation was fraudulent dismissal and the Contracting Officer knew
> that the only person who can sign for the company as documented in the
> Contract was Mr. Peter Nwogu, Officer of the Corporation.  The IOHA
> [Interior Office of Hearings and Appeals] also knew that appellant did not
> sign any documentation approving or agreed to the Board's dismissal of
> appellant's original appeal.  The Contracting Officer and the IOHA knew or
> should have known that appellant did not agree to the settlement and that
> there was no documentation evidencing that Appellant and the corporate
> officer agreed or represented to the IOHA and the Contracting Officer that
> the appeal should be dismissed.  The Contracting Officer and the IOHA
> were wrong when they knew that the so called settlement agreement was
> not signed by Corporate Officer evidencing fraud and should have required
> Appellant to sign the settlement documentations in the Capacity of the
> Acknowledgement of the Settlement Agreement.

 <u>Id.</u> at 1.  Furthermore, plaintiffs nowhere allege, and none of the exhibits provided to the court shows that plaintiffs seek payment for work completed after the execution of the 1998 settlement agreement.  <u>See</u> Compl. <u>passim</u>; <u>see also</u> Pls.' Resp. <u>passim</u>; PX 15; PX 16; Pls.' App.  It appears to the court that plaintiffs seek to have the settlement agreement, which terminated the parties' rights under the contract declared fraudulent and invalid, and seek to be compensated in the amount of $144,527.47 for work completed prior to the settlement agreement.

The Court of Federal Claims does not have jurisdiction over tort claims against the United States. 28 U.S.C. § 1491(a); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997). "A claim for fraud is a claim sounding in tort and therefore cannot be considered by the Court of Federal Claims." Skillo, 68 Fed. Cl. at 742 (quoting Marlin v. United States, 63 Fed. Cl. 475, 476 (2005)). Because plaintiffs' claim regarding Contract No. 144CX300095093 is grounded upon fraud,[22] the court lacks jurisdiction and dismisses the claim. The court also has determined that transfer of plaintiffs' fraud claim is not possible because this claim could not have been brought in another court at the time it was filed.[23] See 28 U.S.C. § 1631.

---

[22]It is the court's view that plaintiffs' claim is a tort claim, not a breach of contract claim. The court recognizes that "[i]f contractual relations exist, the fact that the alleged breach is also tortious does not foreclose Tucker Act jurisdiction." Wood v. United States, 961 F.2d 195, 198 (Fed. Cir. 1992) (quoting Fountain v. United States, 427 F.2d 759, 761 (Ct. Cl. 1970)). However, even if plaintiffs' claim is considered to be a breach of contract claim, this court would still lack jurisdiction over the claim because the claim was not timely filed. Plaintiffs entered into the settlement agreement on November 12, 1998 and state that they discovered the alleged fraud on May 30, 2000. Def.'s App. 1 (Envtl. Safety Consultants Inc., IBCA No. 3626-96, Order Docketing and Dismissing Duplicative and Tardy Appeal). Plaintiffs did not file suit in this court until March 30, 2010. Dkt. No. 1. Even if plaintiffs' claim accrued when plaintiffs discovered the fraud on May 30, 2000, plaintiffs filed suit in this court nearly ten years later, well beyond any statute of limitations found in the CDA, 41 U.S.C. § 607, or in 28 U.S.C. § 2501, the statute of limitations generally applicable to claims in this court.

[23]Based on the applicable statute of limitations, plaintiffs' fraud claim could not have been brought in another court at the time it was filed. See 28 U.S.C. § 1631. "The United States, as sovereign, is immune from suit save as it consents to be sued." Awad v. United States, 301 F.3d 1367, 1371 (Fed. Cir. 2002) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)). The Federal Tort Claims Act (FTCA) operates as a limited waiver of the federal government's sovereign immunity and generally holds the United States liable for tort claims to the same extent as a private individual under the same circumstances. See 28 U.S.C. §§ 1346(b), 2674. The United States District Courts have exclusive jurisdiction to hear tort claims brought against the United States under the FTCA. 28 U.S.C. § 1346(b); Skillo v. United States, 68 Fed. Cl. 734, 742 (2005) (citing McCauley v. United States, 38 Fed. Cl. 250, 264 (1997)). Under the FTCA, if a complaint is filed more than six years after the right of action accrued, the claim is barred. See 28 U.S.C. § 2401(a). In ESCI's November 3, 2001 complaint to the IBCA, ESCI alleged that it "had discovered on May 30, 2000 that the National Park Service had wrongfully modified the Contract and illegally paid its funds to someone other than [ESCI]; namely [ESCI's] attorney, who had signed the Agreement on [ESCI's] behalf." Def.'s App. 1 (Envtl. Safety Consultants Inc., IBCA No. 3626-96, Order Docketing and Dismissing Duplicative and Tardy Appeal). This action was not filed until March 30, 2010. Dkt. No. 1. The right of action for a fraud claim generally accrues when the fraud was or should have been discovered by the plaintiff. See, e.g., Pearl v. City of Long Beach, 296 F.3d 76, 80 n.3 (2d Cir. 2002) ("Where a

To the extent that plaintiffs appeal the IBCA's 1998 dismissal of ESCI's appeal pursuant to the parties' joint stipulation of dismissal and joint settlement agreement, the 2001 dismissal of ESCI's motion for reconsideration, and the 2003 dismissal of ESCI's duplicative appeal, their claim is dismissed.  "This Court simply does not have the power to vacate decisions issued by other tribunals."  Zinger Constr. Co. v. United States, 13 Cl. Ct. 752, 754 (1987) (noting that the court could not vacate decisions by the ASBCA, including a decision that denied the plaintiff's appeal because the parties' settlement agreement was an accord and satisfaction of the plaintiff's claim).  Because the IBCA's actions are subject to review exclusively by the Federal Circuit, 41 U.S.C. § 607(g)(1)(A), this claim is dismissed for lack of jurisdiction.

To the extent that plaintiffs appeal the June 2003 "deemed denied" claim on Contract No. 144CX300095093, that claim is dismissed for lack of jurisdiction.  To proceed under the CDA, an individual must be a "contractor" with the United States within the meaning of the Act at the time the claim arises.  United Pac. Ins. Co. v. Roche, 401 F.3d 1362, 1365 (Fed. Cir. 2005).  A "contractor" is "a party to a Government contract other than the Government."  41 U.S.C. § 601(4).  By June 2003, Contract No. 144CX300095093 had been terminated by the settlement agreement for more than four years.  See PX 16 (Modification of Contract) block 8.  Because plaintiffs filed the 2003 claim after the contract was terminated, they were no longer considered "contractors" under the CDA and therefore had no right to a final decision from a Contracting Officer or a right to appeal under the CDA to the Court of Federal Claims.

To the extent that plaintiffs appeal the August 2, 1996 final CO decision that terminated the contract for default, that claim is dismissed because the claim is time-barred.  A contractor has twelve months from his receipt of the final CO decision to file a

---

party injured by fraud remains ignorant of the fraud through no fault of its own, 'the statute does not even begin to run until the fraud is discovered.'") (quoting Bailey v. Glover, 88 U.S. 342, 347-48 (1874)).  Because plaintiffs waited nearly ten years after they discovered the alleged fraud to file a complaint with this court, the claim could not have be brought in another court because it is barred by the FTCA's statute of limitations.  See 28 U.S.C. § 2401.  Furthermore, the court notes that plaintiffs' fraud claim would likely be barred under the FTCA, as the FTCA excludes claims against the United States arising out of  "misrepresentation" or "deceit."  28 U.S.C. § 2680(h); see, e.g., Beneficial Consumer Disc. Co. v. Poltonowicz, 47 F.3d 91, 96 (3d Cir. 1995) ("[C]ourts have consistently held that fraud claims against the government are not permitted under the FTCA."); Covington v. United States, 303 F. Supp. 1145, 1149 (N.D. Miss. 1969) ("All claims of fraud of any type are excluded from the operation of the Federal Tort Claims Act, and this would include both fraud in factum as well as in inducement, both actual and constructive fraud, intrinsic and extrinsic fraud, and other species of deceit or false representation.").

claim in this court.  41 U.S.C. § 609(a)(3).  Here, the Contracting Officer issued the final decision on August 2, 1996.  Compl. ¶ 56.  Because they appealed the final CO decision to the IBCA on September 12, 1996, that is the latest possible date plaintiffs could claim that they received the final CO decision.  See Compl. ¶ 57.  Plaintiffs filed their Complaint with this court on March 30, 2010.  Dkt. No. 1.  Because plaintiffs waited nearly fourteen years after their receipt of the final CO decision to file in this court, the statute of limitations has expired, and the court does not have jurisdiction over this claim.

B.     Punitive Damages Claim

Plaintiffs request that this court "award plaintiffs punitive damages against the Defendant for breach of contract in bad-faith."  Compl. Prayer for Relief ¶ 4.  The Court of Federal Claims has no jurisdiction to grant punitive damages.  See 28 U.S.C. § 1491(a); Mastrolia v. United States, 91 Fed. Cl. 369, 382 (2010) ("It is well-established that the Court of Federal Claims lacks authority to grant punitive damages.") (citing Greene v. United States, 65 Fed. Cl. 375, 379 (2005)).  Therefore, plaintiffs' claim for punitive damages is dismissed for lack of subject matter jurisdiction.  Furthermore, because plaintiffs seek punitive damages for the government's alleged breaches of the three contracts, transfer of plaintiffs' punitive damages claim is not in the interest of justice.  See 28 U.S.C. § 1631.  A plaintiff may bring suit under the CDA for a breach of contract action only in this court or in an agency board of contract appeals.  41 U.S.C. § § 606, 609(a).  The issue of damages for or flowing from an alleged breach of contract is necessarily bound up with the merits of the claim, and therefore it is not in the interest of justice to transfer the damages issue to another court.

C.     Prompt Payment Act Claim

In Count IV of their Complaint, plaintiffs allege that defendant violated the Prompt Payment Act (PPA) by "failing to promptly pay Plaintiffs for completed contract [work]."  Compl. ¶¶ 74, 75.  Plaintiffs identify the PPA by name in Count IV of the Complaint, but they do not cite to the PPA's U.S. Code sections, 31 U.S.C. §§ 3901-3905 (2006), which provide for pre-dispute interest.  See Compl. ¶¶ 74, 75.  Instead, plaintiffs cite to 41 U.S.C. § 611, which is the CDA interest statute, and 41 U.S.C. § 612, which provides for prompt payment of judgments and monetary awards under the CDA.  Compl. ¶ 74.  However, earlier in their Complaint, plaintiffs assert that this court has jurisdiction over Count IV under the Prompt Payment Act, 31 U.S.C. §§ 3901-3905.  Compl. ¶ 2.  Furthermore, in Count One of their Complaint, which contains assertions related to the Navy contract, plaintiffs simply state that "[t]he Defendant violated the Prompt Payment Act of the United States."  Compl. ¶ 60.  Because plaintiffs are unclear as to which statute defendant allegedly violated, the court addresses their claims under both the CDA and the PPA.

22

To the extent that plaintiffs assert a claim under the CDA, 41 U.S.C. § 611, the court denies defendant's motion to dismiss.  Section 611 provides in relevant part that "[i]nterest on amounts found due contractors on claims shall be paid to the contractor from the date the contracting officer receives the claim pursuant to section 605(a) of this title from the contractor until payment thereof."  41 U.S.C. § 611.  If this court finds that plaintiffs are due money damages for expenses they incurred under the Navy contract before the contract was terminated, then plaintiffs may be entitled to interest under 41 U.S.C. § 611.  See ATK Thiokol, Inc. v. United States, 76 Fed. Cl. 654, 668-69 (2007) (holding that because plaintiffs incurred costs under the contract for which they were never paid, they were entitled to interest under 41 U.S.C. § 611).

To the extent that plaintiffs assert a claim under the CDA, 41 U.S.C. § 612, that claim is dismissed pursuant to RCFC 12(b)(6).  The CDA requires that judgments against the United States and monetary awards to a contractor by an agency board of contract appeals "be paid promptly."  41 U.S.C. § 612(a), (b).  Plaintiffs merely allege that the government failed to pay plaintiffs promptly for completed contract work. Compl. ¶ 75; Pls.' Resp. 17-18.  Because plaintiffs do not allege--and there is nothing in the procedural history to suggest--that plaintiffs have an unpaid judgment or award owed by the United States, plaintiffs' claims under 41 U.S.C. § 612(a), (b) are dismissed pursuant to RCFC 12(b)(6).

To the extent that plaintiffs assert a violation of the PPA, 31 U.S.C. §§ 3901-3905, that claim is dismissed pursuant to RCFC 12(b)(6).  The PPA authorizes the payment of interest to contractors when the government is late in making payment for goods or services under a written contract.  See 31 U.S.C. §§ 3901-3905;[24] N.Y. Guardian Mortgagee Corp. v. United States, 916 F.2d 1558, 1559-60 (Fed. Cir. 1990).  The Court of Federal Claims has determined that the PPA "applies only in cases in which no disagreement exists over the claim."  PCL Constr. Servs. v. United States, 84 Fed. Cl. 601, 606 (2008) (internal citations omitted).  If there is a dispute over payment of a claim, the claim is subject to the CDA interest provision, 41 U.S.C. § 611, rather than the PPA. Id. (citing George Sollitt Constr. Co. v. United States, 64 Fed. Cl. 229, 304 (2005)); 31 U.S.C. § 3907(c).[25]  Here, because there is a clear dispute between the parties as to

---

[24]In relevant part, the PPA provides that "the head of an agency acquiring property or service from a business concern, who does not pay the concern for each complete delivered item of property or service by the required payment date, shall pay an interest penalty to the concern on the amount of the payment due."  31 U.S.C. § 3902(a) (2006).

[25]31 U.S.C. § 3907(c) shows that the PPA is inapplicable when there is a dispute between the parties:

whether plaintiffs are entitled to payment on plaintiffs' contracts with the Navy, the USACE and the NPS, the PPA does not apply, and any claims plaintiffs assert under 31 U.S.C. §§ 3901-3905 are dismissed pursuant to RCFC 12(b)(6).[26]

> D.    Fifth Amendment Takings Claim

In Count V of their Complaint, plaintiffs claim that defendant "has taken Mr. Nwogu's property rights in ESCI in violation of the Fifth Amendment . . . [by] den[ying] Mr. Nwogu access to earned funds in ESCI."  Compl. ¶ 77.  Plaintiffs allege that Nwogu has a property interest in ESCI because he is the owner, only shareholder, president and project manager of ESCI.  Compl. ¶ 76.  Because plaintiffs have not identified a cognizable property interest for the purposes of the Fifth Amendment, this claim is dismissed.

The Court of Federal Claims has jurisdiction over takings claims under the Tucker Act.  Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1309 (Fed. Cir. 2008).  The Takings Clause of the Fifth Amendment provides in relevant part, "[N]or

---

Except as provided in section 3904 of this title, this chapter does not require an interest penalty on payment that is not made because of a dispute between the head of an agency and a business concern over the amount of payment or compliance with the contract.  A claim related to the dispute, and interest payable for the period during which the dispute is being resolved, is subject to the Contract Disputes Act of 1978.

31 U.S.C. § 3904, which is inapplicable to this case, provides:

The head of an agency offered a discount by a business concern from an amount due under a contract for property or service in exchange for payment within a specified time may pay the discounted amount only if payment is made within the specified time.  The head of the agency shall pay an interest penalty on an amount remaining unpaid in violation of this section.  The penalty accrues as provided under sections 3902 and 3903 of this title, except that the required payment date for the unpaid amount is the last day specified in the contract that the discounted amount may be paid.

[26]In their Response, plaintiffs cite to Brooklyn & Queens Screen Manufacturing Co. v. United States, 97 Ct. Cl. 532 (1942) and Suburban Contracting Co. v. United States, 76 Ct. Cl. 533 (1932) to support their claim that defendant violated the Prompt Payment Act (PPA) by failing to pay plaintiffs overdue invoices.  Pls.' Resp. 18.  Given that these two cases were decided before the enactment of the CDA and the PPA in 1978 and 1982, respectively, see Pub. L. No. 95-563 and Pub. L. 97-177, the court finds these cases inapposite.

shall private property be taken for public use, without just compensation." U.S. Const. amend. V. "[A]s a threshold matter, the court must determine whether the claimant has established a property interest for purposes of the Fifth Amendment. . . .  If the claimant fails to demonstrate the existence of a legally cognizable property interest, the court[']s task is at an end." Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004) (citations omitted). "[T]he Constitution does not itself create or define the scope of property interests protected by the Fifth Amendment. 'Instead, existing rules and understandings and background principles derived from an independent source, such as state, federal, or common law, define the dimensions of the requisite property rights for purposes of establishing a cognizable taking.'" Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1213 (Fed. Cir. 2005) (quoting Maritrans, Inc. v. United States, 342 F.3d 1344, 1352 (Fed. Cir. 2003)).

When the government contracts, the government acts in its proprietary or commercial capacity, rather than in its sovereign capacity. Hughes Commc'ns Galaxy, Inc. v. United States (Hughes), 271 F.3d 1060, 1070 (Fed. Cir. 2001). "[A] takings claim cannot be based on the government's acting in its proprietary capacity." J & E Salvage Co. v. United States, 36 Fed. Cl. 192, 195 (1996) (citing Alaska Airlines, Inc. v. Johnson, 8 F.3d 791, 798 (Fed. Cir. 1993)). Therefore, if a plaintiff alleges that the government breached the terms of its contract, generally the plaintiff has a breach of contract claim rather than a claim under the Takings Clause. Hughes, 271 F.3d at 1070 (citing Sun Oil Co. v. United States, 215 Ct. Cl. 716, 770 (1978)). "Accordingly, remedies arise from the contracts themselves, rather than from the constitutional protection of private property rights." Id.

Here, plaintiffs essentially allege that their property interest is unpaid funds that the government owes plaintiffs under the Navy, USACE and NPS contracts.[27] See Compl. ¶¶ 76-77. The government acted in its proprietary capacity when it negotiated, entered into, and terminated the Navy, USACE and NPS contracts. The government's alleged failure to pay plaintiffs for work they completed on the contracts is a claim for a breach of contract and any remedy plaintiffs have is a remedy arising under their contracts with the government, not under the Takings Clause. Defendant's motion to dismiss on this theory of liability is therefore granted.

---

[27]Plaintiffs cite to First Hartford Corp. Pension Plan & Trust v. United States (First Hartford), 194 F.3d 1279 (Fed. Cir. 1999) to support their contention that "[d]efendant's actions in failing to pay the debts it owes ESCI violates Mr. Nwogu's Fifth Amendment right." Pls.' Resp. 17. The case is inapposite. The court in First Hartford held that a shareholder's interest in a liquidation surplus is a cognizable property interest that permits the shareholder to bring suit under the Takings Clause. 194 F.3d at 1296. Plaintiffs do not allege a property interest in a liquidation surplus.

IV.    Conclusion

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART defendant's Motion to Dismiss.

The court DENIES defendant's motion to dismiss Count One (a) as it relates to the claim that plaintiffs submitted to the Contracting Officer in October 2003.

The court DENIES defendant's motion to dismiss Count IV as it relates to interest due to plaintiffs under 41 U.S.C. § 611.

The court GRANTS defendant's motion to dismiss Counts One (b), II, III, IV, except as it relates to interest due to plaintiffs under 41 U.S.C. § 611, and V.

The Clerk is directed to dismiss Counts One (b), II, III and V of plaintiffs' Complaint.

Plaintiffs shall file a memorandum of points and authorities (plaintiffs' Memorandum) which shall SHOW CAUSE why plaintiffs' Count One (a) should not be dismissed.  Plaintiffs' Memorandum shall address the CDA six-year statute of limitations issue as described in footnote 16 of this Opinion and Order.  Plaintiffs' Memorandum shall not include arguments related to claims that the court has dismissed in this Opinion and Order.  Plaintiffs' Memorandum shall be filed on or before Thursday, November 4, 2010.  Defendant shall file its response to plaintiffs' Memorandum on or before Thursday, November 18, 2010, and plaintiff shall file its reply on or before Monday, November 29, 2010.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge