# In the United States Court of Federal Claims

No. 10-191 C

(E-Filed: February 11, 2011)

|  |  |
|---|---|
| ENVIRONMENTAL SAFETY CONSULTANTS, INC., ET AL., ) ) ) ) Plaintiffs, ) ) v. ) ) THE UNITED STATES, ) ) Defendant. ) ) | ) Motion to Dismiss; Six-Year ) Statute of Limitations under the ) Contract Disputes Act, Pub. L. No. ) 111-350, § 7103(a)(4)(A) |

<u>Francis O. Kadiri</u>, Stone Mountain, GA, for plaintiffs.

<u>David D'Alessandris</u>, Washington, DC, with whom were <u>Tony West</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Bryant G. Snee</u>, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

OPINION AND ORDER

HEWITT, Chief Judge

Before the court are plaintiffs' Complaint[1] (Complaint or Compl.), Docket Number (Dkt. No.) 1, filed March 30, 2010; Defendant's Motion to Dismiss (defendant's Motion or Def.'s Mot.) and Defendant's Appendix (Def.'s Mot. App.), Dkt. No. 6, filed June 1, 2010; Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's

---

[1] Plaintiffs attached sixteen exhibits to their Complaint. Plaintiffs did not provide an index or descriptions of their exhibits. Plaintiffs included multiple documents in each exhibit and did not provide a clear or consistent pagination system. The court refers to exhibits to plaintiffs' complaint as PX. The court has attempted to provide a sufficient description of the referenced documents. Unless otherwise indicated, any page numbers the court cites are found at the bottom of the referenced document.

Motion to Dismiss[2] (plaintiffs' Memorandum or Pls.' Mem.), Dkt. No. 11, filed November 4, 2010; Defendant's Response to Plaintiffs' Memorandum of Points and Authorities Pursuant to the Court's Show Cause Order (defendant's Response or Def.'s Resp.) and Appendix (Def.'s Resp. App.), Dkt. No. 13, filed November 17, 2010; and Plaintiffs' Reply to Defendant's Response to Plaintiffs' Memorandum of Points and Authorities (plaintiffs' Reply or Pls.' Reply), Dkt. No. 14, filed November 29, 2010.

Plaintiffs filed their Memorandum pursuant to the court's Opinion and Order of October 21, 2010, Dkt. No. 10. See Envtl. Safety Consultants, Inc. v. United States, 95 Fed. Cl. 77, 100 (2010) (ordering plaintiffs to show cause why Count One (a) of plaintiffs' Complaint should not be dismissed). Familiarity with that opinion is assumed. The court will briefly recount the procedural history and facts relevant to the issues now before the court.

I.   Background

    A.   Procedural History of this Case

Plaintiffs are Environmental Safety Consultants, Inc. (ESCI) and Peter C. Nwogu (Nwogu), who is the founder, owner, President and Project Manager of ESCI. Compl. ¶ 6. In their Complaint, plaintiffs asserted claims under contract law, the Prompt Payment Act and the Takings Clause of the Fifth Amendment related to contracts ESCI entered into with the United States Department of the Navy (Navy), the United States Army Corps of Engineers and the National Parks Service. See Compl. ¶¶ 1, 60-78. Defendant moved to dismiss plaintiffs' contract claims for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). Def.'s Mot. 1. Defendant also moved to dismiss plaintiffs' Fifth Amendment takings claim and plaintiffs' allegation of a violation of the Prompt Payment Act for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the RCFC. Id.

In its Opinion and Order of October 21, 2010, the court granted in part and denied in part defendant's Motion to Dismiss. Envtl. Safety Consultants, Inc., 95 Fed. Cl. at 100. The court dismissed all of plaintiffs' claims related to ESCI's contracts with the United

---

[2]Plaintiffs attached fifteen exhibits to their Memorandum. Plaintiffs did not provide an index or descriptions of their exhibits. Plaintiffs included multiple documents in each exhibit and did not provide a clear or consistent pagination system. The court refers to exhibits to plaintiffs' Memorandum as Pls.' Mem. PX. The court has attempted to provide a sufficient description of the referenced documents. Unless otherwise indicated, any page numbers the court cites are found at the bottom of the referenced document.

States Army Corps of Engineers and the National Parks Service.  See id.  The court also dismissed all of the claims plaintiffs made pursuant to the Prompt Payment Act, 31 U.S.C. §§ 3901-3905 (2006), and the Takings Clause of the Fifth Amendment.  See id.

The court denied defendant's Motion to Dismiss as it related to a specific claim under ESCI's contract with the Navy.  See id.  In Count One (a)[3] of their Complaint, plaintiffs alleged that defendant breached the Navy contract with ESCI by "withholding progress payments and fail[ing] to pay Plaintiffs for work completed" on the contract from November 1995 through August 12, 1998.  Compl. ¶¶ 60, 63.  Plaintiffs asserted that on October 22, 2003 ESCI submitted a "written claim to the contracting officer for a decision of payments of overdue invoices and wrongful [sic] withheld earned contract funds in the amount of approximately $457,762.37."  Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss (Pls.' Resp.), Dkt. No. 7, at 12.  Plaintiffs further asserted that the Contracting Officer (CO) did not issue a final decision on their claim within sixty days, so that under the Contract Disputes Act (CDA), their claim was "deemed denied."  Pls.' Resp. 12; see Act of Jan. 4, 2011, Pub. L. No. 111-350, § 7103(f)(5), 124 Stat. 3677.[4]

---

[3] Plaintiffs numbered their counts as follows:  Count One (a), Count One (b), Count II, Count III, Count IV and Count V.  The court follows plaintiffs' numbering system.

[4] Since the court's Opinion and Order of October 21, 2010 was published, Congress amended the Contract Disputes Act.  See Act of Jan. 4, 2011, Pub. L. No. 111-350, 124 Stat. 3677 (the CDA amendment).  The effect of the CDA amendment as it relates to this case is the relocation of the provisions of the Contracts Disputes Act from 41 U.S.C. §§ 601-613 (2006) to 41 U.S.C. §§ 7101-7109.  See Pub. L. No. 111-350, §§ 7101-7109.  The citations in this Opinion and Order are to the recently-enacted public law, rather than the former United States Code sections.  Normally, citations to Statutes at Large contain a citation to the referenced page(s) of the statute.  However, because the United States Government Printing Office has not yet published the CDA amendment in the Statutes at Large, the court is unable to provide a citation to the referenced page(s) of the Statutes at Large and will provide a citation only to the referenced section number(s) in the public law.

"[T]he intent [of the CDA amendment] is to conform to the understood policy, intent, and purpose of Congress in the original enactments, with such amendments and corrections as will remove ambiguities, contradictions, and other imperfections . . . ."  Pub. L. No. 111-350, § 2(b). Consistent with this goal, Congress did not change the substantive law of the Contract Disputes Act as it relates to this case.  Compare 41 U.S.C. § 605(a) (2006), with Pub. L. No. 111-350, § 7103(a)(4)(A) (both requiring contractors to submit a claim against the federal government to a contracting officer "within 6 years after the accrual of the claim"); compare 41 U.S.C. § 605(c)(5) ("Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim

Plaintiffs' claims relating to their October 22, 2003 submission to the Contracting Officer were the only claims from Count One that were not dismissed.[5] Envtl. Safety Consultants, Inc., 95 Fed. Cl. at 100. The court found that it was not denied jurisdiction over the claims for two reasons:

---

and will authorize the commencement of the appeal or suit on the claim . . . ."), with Pub. L. No. 111-350, § 7103(f)(5) ("Failure by a contracting officer to issue a decision on a claim within the required time period is deemed to be a decision by the contracting officer denying the claim and authorizes an appeal or action on the claim . . . ."); compare 41 U.S.C. § 605(a) ("All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision."), with Pub. L. No. 111-350, § 7103(a)(1)-(2) ("Each claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision . . . . Each claim by a contractor against the Federal Government relating to a contract shall be in writing."); compare 41 U.S.C. § 605(c)(1) ("For claims of more than $100,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor."), with Pub. L. No. 111-350, § 7103(b)(1)(A)-(D) ("For claims of more than $100,000 made by a contractor, the contractor shall certify that – (A) the claim is made in good faith; (B) the supporting data are accurate and complete to the best of the contractor's knowledge and belief; (C) the amount requested accurately reflects the contract adjustment for which the contractor believes the Federal Government is liable; and (D) the certifier is authorized to certify the claim on behalf of the contractor."); compare 41 U.S.C. § 609(a)(3) ("Any action [in the Court of Federal Claims] shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim . . . ."), with Pub. L. No. 111-350, § 7104(b)(3) ("A contractor shall file any action [in the Court of Federal Claims] within 12 months from the date of receipt of a contracting officer's decision . . . .").

For a simplified explanation of the effect of the amendment to the Contract Disputes Act, see Peter LeFevre, Positive law codification will modernize U.S. Code, The Hill's Congress Blog (Sept. 28, 2010, 12:33 PM), http://thehill.com/blogs/congress-blog/; see also Vern Edwards, What is the United States Code and what is in it?, Vern Edwards' Blog (Aug. 18, 2010, 2:00 PM), http://www.wifcon.com/discussion/index.php?autocom=blog&blogid=2&showentry=1572.

[5]The court also "deni[ed] defendant's motion to dismiss Count IV as it relates to interest due to plaintiffs under 41 U.S.C. § 611," Envtl. Safety Consultants, Inc. v. United States, 95 Fed. Cl. 77, 100 (2010), because "[i]f this court finds that plaintiffs are due money damages for expenses they incurred under the Navy contract before the contract was terminated, then plaintiffs may be entitled to interest under 41 U.S.C. § 611," id. at 98 (citing ATK Thiokol, Inc. v. United States, 76 Fed. Cl. 654, 668-69 (2007)).

>   (1) because the Contracting Officer failed to make a final decision on the claim, the twelve month statute of limitations to bring suit in the [United States] Court of Federal Claims [(Court of Federal Claims)] has not yet begun to run, and (2) because the [Armed Services Board of Contract Appeals (ASBCA)] lacked jurisdiction to hear the claim, plaintiffs did not make a binding election to pursue their claim in the ASBCA.

Id. at 90-91.

However, in footnote 16 of its Opinion and Order of October 21, 2010, the court noted that a potential jurisdictional issue related to the October 22, 2003 claim submission remained. Id. at 90 n.16. Footnote 16 states:

>   The briefing on Count One relating to the October 22, 2003 claim did not address a potential jurisdictional issue, to which the court's attention was drawn by the span of time between the formation of the contract in 1995 and the plaintiffs' submission to the Contracting Officer in 2003. Plaintiffs' claims relating to the October 22, 2003 claim may be outside another statute of limitations in the CDA. The CDA states that "[e]ach claim by a contractor against the government relating to a contract . . . shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 605(a) (2006). Neither party has addressed the date when plaintiffs' claim accrued. If plaintiffs' claim accrued more than six years before October 22, 2003, it would be subject to dismissal for lack of jurisdiction.

Id.

Because neither plaintiffs nor defendant addressed the date when plaintiffs' claim accrued or filed a copy of plaintiffs' October 22, 2003 claim submission with the court, the court was unable to determine whether plaintiffs' claim accrued within the CDA's six-year statute of limitations. See Pub. L. No. 111-350, § 7103(a)(4)(A). The court ordered plaintiffs to file a memorandum of points and authorities to show cause as to why plaintiffs' Count One (a) of their Complaint should not be dismissed and specifically directed plaintiffs to address the CDA's six-year statute of limitations issue as described in footnote 16 of the Opinion and Order. Envtl. Safety Consultants, Inc., 95 Fed. Cl. at 100. Defendant submitted ESCI's October 22, 2003 claim submission as the Appendix to its Response. See Def.'s Resp. App.

B.   Relevant Facts[6]

On November 13, 1995 ESCI entered into Contract No. N62470-95-C-2399 FY 95 with the Navy to remove storage tanks and contaminated materials from the Naval Weapons Station in Yorktown, Virginia.  Compl. ¶ 8; Plaintiffs' Exhibit (PX) 12 (Envtl. Safety Consultants, Inc., ASBCA No. 51722, 02-2 BCA ¶ 31,951) 1.  On June 23 and 24, 1997 ESCI and the Navy mutually agreed to modify the contract by increasing the total contract price, modifying the type of work and agreeing to subcontract the remaining work.  PX 10 (Modification P00006).  On June 12, 1998 the Navy's Contracting Officer issued a final decision terminating ESCI's contract for default and notifying ESCI of its appeal rights.[7]  Compl. ¶ 32; PX 12 (Envtl. Safety Consultants, Inc., ASBCA No. 54615, 07-1 BCA ¶ 33,483) 22; Pls.' Mem. PX 14 (Modification P00007) 1-2.

On October 22, 2003 ESCI submitted a certified claim for equitable adjustment to a Contracting Officer.  Def.'s Resp. App. 1;[8] PX 12 (Envtl. Safety Consultants, Inc., ASBCA No. 54615, 07-1 BCA ¶ 33,483) 9-14.  In its October 22, 2003 claim submission, ESCI included a "Summation of Payments And Amount Past Due," in which ESCI listed various "incurred costs" from events that occurred from November 1995 through July 1997, with the exception of interest, and claimed $457,011.02 as the final "[a]mount due to ESCI as of June, 1998."  Def.'s Resp. App. 19.  ESCI also requested an additional $1,000,000 for "injury to ESCI's business reputation, credit damages and conspiracy to injure ESCI and owner," as well as negligence and actions taken in bad faith by the Navy.  Id.  The Contracting Officer has not issued a final decision for this claim.  PX 12 (Envtl.

---

[6]This section sets forth only the relevant facts for the current issue before the court.  The court's Opinion and Order of October 21, 2010 and an opinion by the Armed Services Board of Contract Appeals (ASBCA) contain a more complete factual history of Environmental Safety Consultants, Inc.'s (ESCI) contract with the United States Department of the Navy (Navy), Contract No. N62470-95-C-2399 FY 95.  See Envtl. Safety Consultants, 95 Fed. Cl. at 84-87; Envtl. Safety Consultants, Inc., ASBCA No. 54615, 07-1 BCA ¶ 33,483.

[7]The final decision was issued as Modification P00007 to the contract.  See Plaintiffs' Exhibit (PX) 12 (Envtl. Safety Consultants, Inc., ASBCA No. 51722, 02-2 BCA ¶ 31,951) 2.

[8]The date on the claim submission is October 18, 2003.  Def.'s Resp. App. 1.  When the issue was before the ASBCA, the government stated and the ASBCA found that ESCI submitted its claim to a Navy Contracting Officer (CO) on October 22, 2003.  PX 12 (Envtl. Safety Consultants, Inc., ASBCA No. 54615, 07-1 BCA ¶ 33,483) 13.  Because neither party disputes the date of the claim, the court likewise concludes that ESCI submitted its claim to the CO on October 22, 2003.  The court notes that even if ESCI submitted the claim on October 18, 2003, plaintiffs' claims would still be barred by the Contract Disputes Act's six-year statute of limitations, Pub. L. No. 111-350, § 7103(a)(4)(A).

Safety Consultants, Inc., ASBCA No. 54615, 07-1 BCA ¶ 33,483) 10.  On May 17, 2004 ESCI filed an appeal with the ASBCA, docketed as ASBCA No. 54615, in which ESCI appealed "each and every aspect of the decision of the Contracting Officer for failure to issue decisions amounting to denial of Request for Equitable Adjustment received by the Contracting Officer on October 22, 2003."  Id. at 9-10.  On January 31, 2007 the ASBCA dismissed all of ESCI's claims, holding that the Board did not have jurisdiction to hear the claims because they were untimely under the CDA's six-year statute of limitations.  Id. at 44.

In this case, plaintiffs contend that defendant breached its contract with ESCI by failing to pay ESCI for completed work and by forcing ESCI to transfer its contract to a local contractor.  Compl. ¶¶ 60, 61.  Plaintiffs seek judgment in their favor in the amount of $457,011.02, plus interest, costs and fees.  Compl. ¶ 65.

II.   Legal Standards

   A.   Jurisdiction of the Court of Federal Claims

The Tucker Act establishes and limits the jurisdiction of the Court of Federal Claims.  28 U.S.C. § 1491.  The Tucker Act establishes that this court has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  The Tucker Act also limits the court's jurisdiction to suits against the United States.  McGrath v. United States, 85 Fed. Cl. 769, 772 (2009) (citing United States v. Sherwood, 312 U.S. 584, 588 (1941)).

The Tucker Act provides the waiver of sovereign immunity necessary for a plaintiff to sue the United States for money damages.  United States v. Mitchell, 463 U.S. 206, 212 (1983).  However, the Tucker Act does not confer any substantive rights upon a plaintiff.  United States v. Testan, 424 U.S. 392, 398 (1976).  A plaintiff must establish an independent substantive right to money damages from the United States, that is, a money-mandating source within a contract, regulation, statute or constitutional provision itself, in order for the case to proceed.  Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

The Tucker Act sets out this court's jurisdiction over disputes arising under the Contract Disputes Act:

> The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a

> contractor . . . including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued . . . .

28 U.S.C. § 1491(a)(2), amended by Act of Jan. 4, 2011, Pub. L. No. 111-350, 124 Stat. 3677; Alliant Techsystems, Inc. v. United States, 178 F.3d 1260, 1264 (Fed. Cir. 1999) (quoting same).

Under the CDA, to file a claim in this court, "the contractor must have submitted a proper CDA claim to the contracting officer requesting a decision." England v. Sherman R. Smoot Corp., 388 F.3d 844, 852 (Fed. Cir. 2004). To submit a proper claim, a contractor must submit a claim to the Contracting Officer within six years of the accrual of the claim. See Pub. L. No. 111-350, § 7103(a)(4)(A). Specifically, the CDA requires that "[e]ach claim by a contractor against the Federal Government relating to a contract . . . be submitted to a contracting officer for a decision[,] . . . be in writing[,] . . . [and] be submitted within 6 years after the accrual of the claim." Pub. L. No. 111-350, § 7103(a)(1), (2), (4)(A). A claim accrues on the date when all events that fix liability of the government "were known or should have been known." FAR 33.201 (2010). "For liability to be fixed, some injury must have occurred. However, money damages need not have been incurred." Id. If the contractor fails to submit a proper claim to the Contracting Officer, the Contracting Officer is unable to render a final decision, and there is no basis for jurisdiction in the Court of Federal Claims. See M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1327-28 (Fed. Cir. 2010); see also Paragon Energy Corp. v. United States, 227 Ct. Cl. 176, 183-84, 645 F.2d 966, 971 (1981) (applying the concept to the United States Court of Claims).

      B.      12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Subject matter jurisdiction is a threshold matter which a court must determine at the outset of a case. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998); PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1365 (Fed. Cir. 2007). The plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988) (citing Zunamon v. Brown, 418 F.2d 883, 886 (8th Cir. 1969)). The court must accept as true all undisputed allegations of fact made by the non-moving party and draw all reasonable inferences from those facts in the non-moving party's favor. Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995) (citing Scheuer v. Rhodes, 416 U.S. 232, 236-37 (1974)). However, "[w]hen a party challenges the jurisdictional facts alleged in the complaint, the court may consider relevant evidence outside the pleadings to resolve the factual dispute."

Arakaki v. United States, 62 Fed. Cl. 244, 247 (2004) (citing Reynolds, 846 F.2d at 747 and Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985)). If a court determines that it does not have jurisdiction, it must dismiss the claim. RCFC 12(h)(3).

      C.     Transfer for Lack of Subject Matter Jurisdiction

Under 28 U.S.C. § 1631, a federal court may transfer a case to another federal court when (1) the transferring court lacks subject matter jurisdiction; (2) the case could have been brought in the transferee court at the time it was filed; and (3) such a transfer is in the interest of justice. See Rodriguez v. United States, 862 F.2d 1558, 1559-60 (Fed. Cir. 1988) (citing Town of North Bonneville, Wash. v. U.S. District Court, 732 F.2d 747, 750 (9th Cir. 1984)).

III.    Discussion

Defendant provided the court with the claim ESCI submitted to the Navy Contracting Officer on October 22, 2003. See Def.'s Resp. App. The first part of the October 22, 2003 claim submission is a twenty-seven paragraph description of ESCI's claims, see id. at 2-17, and the second part is a table with concise names and dates of ESCI's claims, see id. at 19. The court first reviews ESCI's table and determines that, based on the information provided in that table, ESCI's claims accrued no later than July 1997. Infra Part III.A. The court then reviews ESCI's detailed descriptions of the claims and concludes that, at the latest, ESCI's claims accrued in August 1997. Id.

In their Memorandum, plaintiffs also raised three new, meritless arguments, which the court addresses for completeness. Infra Part III.B.

      A.     Plaintiffs' Claims Asserted in ESCI's October 22, 2003 Claim Submission Accrued Outside the CDA's Six-Year Statute of Limitations

Plaintiffs assert that their "claim did not accrue until June 12, 1998, when their contract was terminated for default by the CO," Pls.' Mem. 20, because "June 12, 1998[] was the date the CO made a final decision not to release progress payments," Pls.' Mem. 23. However, aside from the claim relating to the termination for default,[9] ESCI's claims

---

[9]Plaintiffs elected to appeal the termination for default to the ASBCA, which has not yet issued a decision, so this court has no jurisdiction over that claim. See Nat'l Neighbors, Inc. v. United States, 839 F.2d 1539, 1542 (Fed. Cir. 1988) (finding that a contractor may either appeal a CO's final decision to an agency board of contract appeals or to the Court of Federal Claims, but not both).

in its October 22, 2003 claim submission accrued, not at the issuance of the final decision terminating the contract for default, but at the latest in August 1997, when plaintiffs knew or should have known of all the events that fixed liability for the government.  See FAR 33.201.

After reviewing ESCI's October 22, 2003 claim submission, it is the court's view that, with the exception of plaintiffs' claim relating to the termination for default, plaintiffs' claims accrued prior to October 22, 1997 and are therefore outside the CDA's six-year statute of limitations.  See Pub. L. No. 111-350, § 7103(a)(4)(A).  ESCI included a "Summation of Payments And Amount Past Due" (Summation) in its October 22, 2003 claim which shows that the entire $457,011.02 amount claimed is based upon events occurring from November 1995 through July 1997, with the exception of interest purportedly due on the pre-July 1997 amounts.[10]  See Def.'s Resp. App. 19.  Specifically, the Summation contains a list of items for which ESCI allegedly has not received payment.  Id.  For items one through eleven, ESCI stated that the events linked to those items occurred in July 1997 or earlier.[11]  Id.  Item twelve, labeled "Incurred Cost" in the amount of $518,158.35, does not contain a date, but a review of the claim shows that ESCI calculated the $518,158.35 by adding the amounts listed in items nine ($599,908.35) and eleven ($27,250.00) and then subtracting the amount listed in item ten ($109,000.00).  See id.; see also Def.'s Resp. 3.  Because the events listed in items nine, ten and eleven all occurred in June and July 1997, the "Incurred Cost" in item twelve must have accrued no later than July 1997.  See Def.'s Resp. App. 19.  Item thirteen,

---

[10]The court notes that below the "Summation of Payments And Amount Past Due" (Summation), ESCI requested an additional one million dollars for damage "to ESCI's business reputation, credit damages and conspiracy to injure ESCI and owner," negligence and bad faith. Def.'s Resp. App. 19.  ESCI alleged only bad faith in Count One (a) of its Complaint.  See Compl. ¶¶ 60-63.  Because the court finds that, with the exception of the claim relating to the termination for default, all of plaintiffs' claims relating to ESCI's October 22, 2003 claim submission are outside the CDA's six-year statute of limitations, see Pub. L. No. 111-350, § 7103(a)(4)(A), any bad faith that ESCI alleged in its October 22, 2003 claim submission is outside the CDA's six-year statute of limitations as well.  To the extent that ESCI alleges bad faith regarding the termination for default, that claim has already been presented to the ASBCA, where it is still pending.  This court has no jurisdiction over that claim.  See Nat'l Neighbors, 839 F.2d at 1542 (finding that a contractor may either appeal a CO's final decision to an agency board of contract appeals or to the Court of Federal Claims, but not both).

[11]Item seven, labeled "Amount of credit to Navy (deletion)," does not contain a date in the Summation.  See Def.'s Resp. App. 19.  However, in paragraph fifteen of ESCI's October 22, 2003 claim, ESCI admits that this event occurred prior to April 1997 because ESCI listed this item in its April 7, 1997 Request for Equitable Adjustment.  See id. at 11; see also PX 7 (April 7, 1997 letter sent from ESCI to Ms. K. L. Martin, CO for the Navy) 8.

labeled "Unfinished work due to Government negligence" in the amount of $95,000.00, also does not contain a date, see id., but a review of an undated list of claims prepared by ESCI appears to indicate that ESCI knew about the quantity of the work remaining on the contract in, at the latest, June 1997, see PX 10 (Environmental Safety Consultants, Inc. Claims and Damages Against the Navy) 2 (showing that directly under the "Total Amount due ESCI June 1997," ESCI listed the "Est. uncompleted amount of work" as $95,000.00). ESCI labeled item fourteen as "Incurred cost as of July 12, 1998" in the amount of $423,158.35, but a review of the claim shows that ESCI calculated the $423,158.35 by subtracting the amount listed in item thirteen ($95,000.00) from the amount listed in item twelve ($518,158.35). See Def.'s Resp. App. 19; see also Def.'s Resp. 3. Because the events listed in items twelve and thirteen occurred no later than July 1997, the "Incurred cost" in item fourteen must have accrued in July 1997. See Def.'s Resp. App. 19. Item fifteen assesses interest allegedly due on the incurred costs listed in item fourteen, and item sixteen, without mentioning any new event from which a claim could have accrued, combines items fourteen and fifteen to reach the total "Amount due to ESCI as of June, 1998." Id.

From ESCI's Summation it is clear that, other than the interest purportedly due, ESCI's claims against the government are based entirely upon events occurring no later than July 1997. See id.; see also PX 12 (Envtl. Safety Consultants, Inc., ASBCA No. 54615, 07-1 BCA ¶ 33,483) 24 (stating that ESCI's entire $457,011.02 claim "relates to events and asserted liability which were fixed as of July 1997, with adjustments for a credit to the government for unfinished work and accrual of interest as of 12 June 1998").

A review of ESCI's entire October 22, 2003 claim submission similarly shows that plaintiffs' claims accrued prior to October 22, 1997. In paragraphs one through five of its October 22, 2003 claim, ESCI alleged that the Navy increased the scope of the work on March 20, 1997 and June 18, 1997, caused delays and work suspensions from May 1996 through October 1996 and from December 1996 through April 1997, and forced ESCI to use a subcontractor to complete the work in November 1996. See Def.'s Resp. App. 2-5. ESCI essentially repeated these allegations of work delays and changed conditions in paragraphs fifteen, sixteen, twenty, twenty-three, twenty-four and twenty-five of its October 22, 2003 claim. See id. at 11, 13, 15-16. On June 23 and 24, 1997 the parties entered into Modification No. P00006, which specifically addressed ESCI's alleged overhead increases and the changes to the type of work to be performed and set forth an agreement to subcontract the remaining work. See PX 10 (Modification P00006). Therefore, at the latest, plaintiffs' claims regarding changes in work and delays accrued on June 23, 1997, when ESCI entered into Modification P00006, because, at that point, plaintiffs knew or should have known of the events that are alleged to give rise to government liability. See FAR 33.201; see also PX 12 (Envtl. Safety Consultants, Inc.,

ASBCA No. 54615, 07-1 BCA ¶ 33,483) 40 ("All of the events . . . occurred, if at all, prior to 23/24 June 1997.").

In paragraphs six and twenty-one of its October 22, 2003 claim, ESCI alleged that ESCI submitted an invoice to the Navy on June 23, 1997 that the Navy returned unpaid. Def.'s Resp. App. 5-6, 14. ESCI admitted that "ESCI was informed in early July 1997 that . . . ESCI's invoice[] would not be paid as was agreed upon [on] June 23, 1997." Id. at 6; see also Pls.' Mem. PX 2 (letters dated July 2, 1997, July 7, 1997 and July 17, 1997 from ESCI to Kathy L. Martin, Navy CO) (each requesting payment on the June 23, 1997 invoice). Therefore, at the latest, plaintiffs' claims regarding its unpaid June 23, 1997 invoice accrued in July 1997 because at that point, plaintiffs knew or should have known of the events that are alleged to give rise to government liability. See FAR 33.201.

In paragraphs seven through twelve of its October 22, 2003 claim, ESCI alleged collusion among the Navy, the subcontractor and the surety to terminate the contract, damage ESCI's reputation and withhold payments to ESCI. Def.'s Resp. App. 6-9. All of the alleged events that ESCI described in its claim occurred, if at all, prior to and during August 1997. See id. ESCI admitted that "on August 17, 1997[] ESCI learned from the subcontractor at a lunch meeting[] that the [Resident Officer in Charge of Construction], the subcontractor and the surety had a conspiracy meeting." Id. at 6. Even assuming that ESCI asserted a cognizable claim against the government, plaintiffs' claims accrued on August 17, 1997 at the latest, because at that point, plaintiffs knew or should have known of the events that are alleged to give rise to government liability. See FAR 33.201.

In paragraph thirteen of its October 22, 2003 claim, ESCI alleged that the Navy's Resident Officer in Charge of Construction "caused ESCI to file bankruptcy in 1991 and 2000." Def.'s Resp. App. 9. The majority of ESCI's allegations in this paragraph are against the surety rather than the government. See id. at 9-10. The government cannot be held liable in a proceeding in this court for the actions of the surety. See 28 U.S.C. § 1491(a); see also McGrath, 85 Fed. Cl. at 772 ("The jurisdiction of the [Court of Federal Claims] is limited to suits against the United States.") (citing Sherwood, 312 U.S. at 588)). The remaining allegations are against the government and repeat the same allegations of work delays and failure to pay ESCI in accordance with contract terms and conditions that ESCI previously asserted in paragraphs one through six. See id. At the latest, plaintiffs' claims regarding work delays and failure to pay accrued in July 1997 because at that point, plaintiffs knew or should have known of the events that are alleged to give rise to government liability. See FAR 33.201.

In paragraph fourteen of its October 22, 2003 claim, ESCI alleged that the Navy wrongfully terminated the contract in June 1998. Def.'s Resp. App. 10. Because ESCI

filed a timely appeal to the ASBCA of the CO's final decision regarding the termination for default in August 1998, see PX 11 (Notice of Appeal) 1, the claim is not barred by the CDA's six-year statute of limitations, Pub. L. No. 111-350, § 7103(a)(4)(A). However, as the court found in its Opinion and Order of October 21, 2010, plaintiffs filed their claim in this court well beyond the CDA's twelve month statute of limitations. Envtl. Safety Consultants, Inc., 95 Fed. Cl. at 92 (citing 41 U.S.C. § 609(a)(3)). Plaintiffs' claims regarding the termination for default would also be barred in this court by the election doctrine because ESCI appealed the termination for default to the ASBCA, where the issue is still pending. See Nat'l Neighbors, Inc. v. United States, 839 F.2d 1539, 1542 (Fed. Cir. 1988) (finding that a contractor may either appeal a CO's final decision to an agency board of contract appeals or to the Court of Federal Claims, but not both).

In paragraphs seventeen, twenty-one and twenty-two of its October 22, 2003 claim, ESCI alleged that the Navy failed to pay ESCI's invoices of June 1997 and July 1997. Def.'s Resp. App. 12, 14-15. In July and August 1997 ESCI sent at least four letters to the Navy requesting payment on its invoices. See Pls.' Mem. PX 2 (letters dated July 2, 1997, July 7, 1997, July 17, 1997 and August 15, 1997 from ESCI to Kathy L. Martin, Navy CO). In its August 15, 1997 letter, ESCI acknowledged that the Navy was refusing payment on its invoices because ESCI had not timely paid its subcontractors and suppliers. See Pls.' Mem. PX 2 (Letter dated August 15, 1997 from ESCI to Ms. Kathy L. Martin, CO for the Navy). Therefore, at the latest, plaintiffs' claims regarding its unpaid June and July 1997 invoices accrued in August 1997 because at that point, plaintiffs knew or should have known of the events that are alleged to give rise to government liability. See FAR 33.201.

In paragraphs eighteen through twenty-five of its October 22, 2003 claim, ESCI made various allegations concerning the scope and the cost of the work completed by its subcontractor, Rickmond Environmental Services, Inc. (Rickmond). See Def.'s Resp. App. 12-16. Even assuming that the government could be held liable for these allegations, all of the events ESCI described in these paragraphs occurred, if at all, prior to August 1997. See id. In June and August of 1997, ESCI acknowledged its dispute with its subcontractor by sending two letters to Rickmond regarding the amount of work Rickmond completed on the contract. Id. at 13. Therefore, at the latest, plaintiffs' claims regarding its allegations related to its subcontractor accrued in August 1997 because at that point, plaintiffs knew or should have known of the events that are alleged to give rise to government liability. See FAR 33.201.

In paragraph twenty-six of its October 22, 2003 claim, ESCI alleged that it sent the Navy two proposals to complete the work in March 1998. Def.'s Resp. App. 16-17. The court was only provided with an incomplete copy of one letter from ESCI to the Navy that

was dated in March 1998. Pls.' Mem. PX 8 (letter dated March 20, 1998 from ESCI to Kathy L. Pope, Navy CO). The March 20, 1998 letter discussed three topics: (1) the involvement of an additional contractor to complete the work; (2) a dispute with subcontractor Rickmond; and (3) a request for funds allegedly owed to ESCI for completed work. See id. Even assuming the first topic contains a claim that could be brought against the government, ESCI did not mention the involvement of an additional contractor to complete the work in its October 22, 2003 claim, see Def.'s Resp. App. passim, and therefore this court has no jurisdiction over the claim, see England, 388 F.3d at 852. Even assuming that the government could be held liable for ESCI's dispute with subcontractor Rickmond, the claim accrued, at the latest, in August 1997. See Def.'s Resp. App. 13. Regarding the request for additional funds in its March 20, 1998 letter, ESCI indicated that its claim accrued in June 1997 by stating that "ESCI is owed approximately $257,833.25 for work completed, plus interest as of June 30, 1997." Pls.' Mem. PX 8 (letter dated March 20, 1998 from ESCI to Kathy L. Pope, Navy CO) 2. The continued communications between the parties regarding the completion of the work remaining on the contract and ESCI's repeated requests for payments that the Navy previously denied did not change the dates on which plaintiffs' claims accrued. Cf. Brighton Village Assocs. v. United States, 52 F.3d 1056, 1061 (Fed. Cir. 1995) (finding that "[t]he mere continuance of negotiations . . . constitutes no reason to extend the limitations period." (internal quotation omitted)). At the latest, all of the alleged claims that ESCI discussed in the March 20, 1998 letter accrued no later than August 1997 because, at that point, plaintiffs knew or should have known of the events that are alleged to give rise to government liability. See FAR 33.201.

Finally, in paragraph twenty-seven of its October 22, 2003 claim, ESCI alleged that the surety "was engaged in blackmail, lawsuit and financial harassments against ESCI." Def.'s Resp. App. 17. Because ESCI does not state a claim against the government in this paragraph, the court has no jurisdiction to entertain the claim. See 28 U.S.C. § 1491(a); see also McGrath, 85 Fed. Cl. at 772 ("The jurisdiction of the [Court of Federal Claims] is limited to suits against the United States.") (citing Sherwood, 312 U.S. at 588)).

Under the CDA, in order to file a claim with the Court of Federal Claims, "the contractor must have submitted a proper CDA claim to the contracting officer requesting a decision." England, 388 F.3d at 852. To submit a proper claim, a contractor must submit a claim to the Contracting Officer within six years of the accrual of the claim. See Pub. L. No. 111-350, § 7103(a)(4)(A). If the contractor does not submit a proper claim to the Contracting Officer, the Contracting Officer is unable to render a final decision, and there is no basis for jurisdiction in the Court of Federal Claims. See M. Maropakis Carpentry, Inc., 609 F.3d at 1327-28. Because plaintiffs' claims accrued, at the latest, in August 1997, ESCI submitted its October 22, 2003 claim to the Contracting Officer

outside the CDA's six-year statute of limitations under Pub. L. No. 111-350, § 7103(a)(4)(A). Because plaintiffs failed to submit a proper claim to the Contracting Officer, plaintiffs' claims relating to ESCI October 22, 2003 claim submission are dismissed for lack of jurisdiction.

      B.      Plaintiffs' Newly Raised Arguments are Without Merit

In its Opinion and Order of October 21, 2010, the court specifically directed plaintiffs to "address the CDA six-year statute of limitations issue" and ordered plaintiffs "not [to] include arguments related to claims that the court has dismissed." Envtl. Safety Consultants, Inc., 95 Fed. Cl. at 100. Nevertheless, plaintiffs ignored the court's order and addressed several new arguments in their Memorandum, none of which has merit. In their Memorandum, plaintiffs, for the first time, argue that they are entitled to equitable tolling, Pls.' Mem. 24-25, that ESCI submitted two claims to the Contracting Officer that should be considered "deemed denied" under the CDA, Pls.' Mem. 19-20, and that they are entitled to additional damages under their contract with the Navy, Pls.' Mem. 25-30. For completeness, the court addresses each argument in turn.

      1.      Plaintiffs Are Not Entitled to Equitable Tolling

Plaintiffs argue that they are entitled to equitable tolling. Plaintiffs state that "the length of time it took [p]laintiffs to negotiate with the CO, and the CO's delay in evaluation of [p]laintiffs' responses, proposals, work plans, coupled with [p]laintiffs' bankruptcy filing and the CO's final decisions in June 1998, tolled the time [p]laintiffs were required to have filed their claim with the CO." Pls.' Mem. 25 (citation omitted); Pls.' Reply 14 ("The inaction of the CO in failing to issue final decisions in 1997 through June 12, 1998, tolled the CDA six years statute of limitations . . . .").

Unlike the six-year statute of limitations generally applicable to suits in this court, cf. John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 135-36 (2008), the six-year time limit for submitting a claim to the Contracting Officer under Pub. L. No. 111-350, § 7103(a)(4)(A) is subject to equitable tolling in appropriate circumstances, Arctic Slope Native Ass'n v. Sebelius (Arctic Slope), 583 F.3d 785, 798 (Fed. Cir. 2009)). "The doctrine of equitable tolling 'is a narrow doctrine' that enables courts to toll the statute of limitations for compelling justifications." Roth v. United States, 73 Fed. Cl. 144, 153 (2006) (quoting Martinez v. United States, 333 F.3d 1295, 1318 (Fed. Cir. 2003)). The Supreme Court has "allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) (footnotes omitted). However, courts do not grant equitable

15

tolling in circumstances where "a plaintiff discovers the existence, or could have discovered the existence, of a cause of action." Barney v. United States, 57 Fed. Cl. 76, 88 (2003) (citing Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988)). "'Mere excusable neglect is not enough to establish a basis for equitable tolling.'" Roth, 73 Fed. Cl. at 153 (quoting Martinez, 333 F.3d at 1318).

As the court found in its Opinion and Order of October 21, 2010, "equitable tolling is not applicable to this case because plaintiffs neither argued for equitable tolling as a legal matter nor provided evidence of any circumstances which could support the grant of relief by equitable tolling." Envtl. Safety Consultants, Inc., 95 Fed. Cl. at 92 n.18. Plaintiffs now appear to allege that the Navy's continued correspondence with ESCI following the accrual of ESCI's claims after August 1997 is evidence of "government misconduct" that warrants equitable tolling. See Pls.' Mem. 25.

After reviewing the correspondence offered by plaintiffs for their proposition that the government misled ESCI into allowing the claim submission deadline to pass, the court finds no evidence of any government misconduct that would warrant equitable tolling. From July 1997 through June 12, 1998 when the contract was terminated for default, the Navy maintained its position that it would not pay ESCI its requested funds and repeatedly asked ESCI to finish the remaining work under the contract. See Pls.' Mem. PX 1 (letter dated April 10, 1998 from Kathy L. Pope, Navy CO, to ESCI); Pls.' Mem. PX 4 (letter dated September 4, 1997 from C. J. Gallagher, Navy CO, to ESCI); Pls.' Mem. PX 4 (letter dated September 30, 1997 from Kathy Martin, Navy CO, to ESCI); Pls.' Mem. PX 5 (letter dated January 6, 1998 from Kathy L. Pope, Navy CO, to ESCI); Pls.' Mem. PX 6 (letter dated January 22, 1998 from Kathy L. Pope, Navy CO, to ESCI); Pls.' Mem. PX 11 (letter dated May 8, 1998 from Kathy L. Pope, Navy CO, to ESCI); see also Pls.' Mem. PX 2 (letters dated July 2, 1997, July 7, 1997, July 17, 1997 and August 15, 1997 from ESCI to Ms. Kathy L. Martin, CO for the Navy) (each acknowledging that the Navy continued to refuse payment on ESCI's June and July 1997 invoices). Because there is no evidence of government misconduct, equitable tolling of the CDA's six-year statute of limitations under Pub. L. No. 111-350, § 7103(a)(4)(A) is not warranted, and plaintiffs' claims relating to ESCI's October 22, 2003 claim submission are dismissed for lack of jurisdiction.

2.   ESCI's April 7, 1997 Request for Equitable Adjustment and ESCI's June 23, 1997 Invoice Were Not Properly Submitted Claims Under the CDA

Plaintiffs assert that ESCI submitted two claims to the Contracting Officer that should be considered "deemed denied" under the CDA. Pls.' Mem. 19-20; Pls.' Reply 2. Plaintiffs assert that ESCI submitted a "non-routine request for equitable adjustment" to the Contracting Officer on April 7, 1997, Pls.' Reply 2; Pls.' Mem. 13, 19, and an invoice

to the Contracting Officer on June 23, 1997, Pls.' Mem. 19. Plaintiffs argue that because the Contracting Officer did not issue a final decision on plaintiffs' claims, those claims are deemed denied under the CDA. Pls.' Mem. 19-20; Pls.' Reply 2. Plaintiffs further contend that because these claims are deemed denied, the twelve-month statute of limitations to file suit in the Court of Federal Claims has not begun to run. Pls.' Reply 2; see Pub. L. No. 111-350, § 7104(b)(3). However, neither submission is a properly submitted "claim" under the CDA.

ESCI's April 7, 1997 letter to the Contracting Officer is not a "claim" under the CDA because it was not properly certified. "[A] written demand or written assertion by the Contractor seeking the payment of money exceeding $100,000 is not a claim under the [CDA] until certified." FAR 52.233-1(c). In its letter, which was in response to a letter from the CO, ESCI "proposed changes to modify the contract" and requested an additional $205,463.60 from the Navy to complete the work under the contract. PX 7 (letter dated April 7, 1997 from ESCI to Ms. K. L. Martin, Navy CO) 1, 8; Def.'s Resp. App. 11 ("ESCI's total estimated additional increase due to changes was $205,463.60."). Under the CDA, if a contractor submits a claim to a CO that is greater than $100,000, the contractor must "certify that – (A) the claim is made in good faith; (B) the supporting data are accurate and complete to the best of the contractor's knowledge and belief; (C) the amount requested accurately reflects the contract adjustment for which the contractor believes the Federal Government is liable; and (D) the certifier is authorized to certify the claim on behalf of the contractor." Pub. L. No. 111-350, § 7103(b)(1)(A)-(D). ESCI's April 7, 1997 letter does not contain this required certification. See PX 7 (letter dated April 7, 1997 from ESCI to Ms. K. L. Martin, Navy CO) passim; see also Envtl. Safety Consultants, Inc., ASBCA No. 51722, 03-1 BCA ¶ 32,057 (finding that ESCI's "7 April 1997 cost proposal in the amount of $205,463.60 in response to a 20 March 1997 Navy request for proposals . . . is unquestionably not certified"). For submissions of claims over $100,000, "a lack of any certification before filing cannot be waived and no cure will be allowed." City of Burbank v. United States, 47 Fed. Cl. 261, 271 (2000), rev'd on other grounds, 273 F.3d 1370 (Fed. Cir. 2001). Because ESCI's April 7, 1997 letter was a response to a letter from the Navy rather than a certified claim under the CDA, ESCI's claims in the April 7, 1997 letter will not be considered "deemed denied" under the CDA. Any claims that ESCI asserted in its April 7, 1997 letter that plaintiffs did not properly present to a CO will not be considered by this court. See Arctic Slope, 583 F.3d at 793 ("[T]he presentment of claims to a contracting officer . . . is a prerequisite to suit in the Court of Federal Claims . . . .").

ESCI's June 23, 1997 invoice is not a "claim" under the CDA because, as plaintiffs admit, it was a "routine request" for payment. See Pls.' Mem. 19; see also PX 9 (Naval Facilities Engineering Command Contractor's Invoice). "A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim

17

under the [CDA]." FAR 52.233-1(c). "A routine request for payment . . . is made under the contract, not outside it. For example, a voucher or invoice is submitted for work done or equipment delivered by the contractor in accordance with the expected or scheduled progression of contract performance." Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1577 (Fed. Cir. 1995). ESCI's June 23, 1997 invoice was not in dispute when ESCI submitted the invoice to the Navy. As ESCI stated in a letter accompanying its invoice, its invoice was a "payment request in accordance with [a] contract specification section" and "[t]he drawings, materials, and work performed [were] in compliance with contract requirements." PX 9 (letter dated June 23, 1997 from ESCI to M. R. Fohner, Navy AROIC). Furthermore, Mr. Nwogu, president of ESCI, certified that "[t]he amounts requested [in the invoice] are only for performance in accordance with the specifications, terms and conditions of the contract." PX 9 (Contractor Certification). Because ESCI's June 23, 1997 invoice was a routine request for payment, it is not a claim under the CDA and any claims that ESCI asserted in its June 23, 1997 invoice that plaintiffs did not properly present to a CO will not be considered by this court. See Arctic Slope, 583 F.3d at 793 ("[T]he presentment of claims to a contracting officer . . . is a prerequisite to suit in the Court of Federal Claims . . . .").

      3.      Plaintiffs Are Not Entitled to Additional Damages

Plaintiffs assert that they are entitled to additional damages under their contract with the Navy. See Pls.' Mem. 25-30. Specifically, plaintiffs allege that they are entitled to "costs incurred in connection with the work performance of the contract" and "costs incurred in connection with the administration of the contract." Id. at 29. Although plaintiffs allege that they are entitled to additional costs incurred prior to the termination of the contract on June 12, 1998, see id., ESCI did not present these costs in its October 22, 2003 claim submission, with the possible exception of costs incurred prior to August 1997, see Def.'s Resp. App. passim; see also Part III.A supra.[12] The costs that ESCI

---

[12]In the Summation of its October 22, 2003 claim submission, ESCI did not include any "costs incurred in connection with the work performance of the contract," Pls.' Mem. 29, based on events occurring after July 1997, see Def.'s Resp. App. 19; see also Part III.A supra. ESCI completely failed to include any "costs incurred in connection with the administration of the contract," Pls.' Mem. 29, in the Summation, see Def.'s Resp. App. 19; see also Part III.A supra. Although in paragraph twenty-six of its October 22, 2003 claim submission, ESCI made a passing reference to "proposals" it sent to the Navy in March 1998 for completion of the work remaining on the contract, ESCI failed to claim any costs incurred in connection with these proposals. See Def.'s Resp. App. 16-17; see also ECC Int'l Corp. v. United States, 43 Fed. Cl. 359, 365-66 (1999) ("Submission of a valid claim to a contracting officer requires the contractor to specify its bases for relief. Although no prescription requires that a claim be submitted in any particular form or use any particular wording, the contractor must provide a clear and

included in its October 22, 2003 claim are barred by the CDA's six-year statute of limitations. See Part III.A supra. Plaintiffs do not allege, and there is no evidence to suggest, that ESCI presented these costs in a different claim submission to a Contracting Officer. See Pls.' Mem. 25-30. The court does not have jurisdiction over the costs that ESCI did not include in a proper claim submission to a Contracting Officer. See Arctic Slope, 583 F.3d at 793 ("[T]he presentment of claims to a contracting officer . . . is a prerequisite to suit in the Court of Federal Claims . . . .").

      C.      Transfer of Plaintiffs' Claims is Not Appropriate

The dismissed claims will not be transferred to another court under 28 U.S.C. § 1631 because they could not be brought in another court. Under the CDA, a contractor may appeal a Contracting Officer's final decision only to an agency board of contract appeals or the Court of Federal Claims. See Pub. L. No. 111-350, § 7104(a), (b). Plaintiffs' claims cannot be transferred to an agency board of contract appeals because it is not a "court" within the meaning of 28 U.S.C. § 1631, the statute authorizing transfers.[13] See Skillo v. United States, 68 Fed. Cl. 734, 746-47 (2005).

IV.      Conclusion

For the foregoing reasons, the court GRANTS defendant's Motion to Dismiss. The Clerk of Court shall DISMISS plaintiffs' Complaint and ENTER JUDGMENT for defendant. No costs.

      IT IS SO ORDERED.

                                      s/ Emily C. Hewitt
                                      EMILY C. HEWITT
                                      Chief Judge

---

unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." (internal quotations omitted)).

    [13]The term "court" in 28 U.S.C. § 1631 includes "the courts of appeals and district courts of the United States, the United States District Court for the District of the Canal Zone, the District of Guam, the District Court of the Virgin Islands, the United States Court of Federal Claims, and the Court of International Trade." 28 U.S.C. § 610 (2006).